**In re BALDWIN–UNITED CORPORATION (Single Premium Deferred Annuities Insurance Litigation).**

**MDL No. 581–CLB.***

United States District Court,
S.D. New York.

Nov. 28, 1984.

---

\* (File only in 83 Civ. 7009–CLB, 83 Civ. 7197–CLB, 83 Civ. 7358–CLB, 83 Civ. 7359–CLB, 83 Civ. 7568–CLB, 83 Civ. 8084–CLB, 83 Civ. 8474– CLB, 83 Civ. 8475–CLB, 84 Civ. 0098–CLB, 84 Civ. 1673–CLB, 84 Civ. 2233–CLB, 84 Civ. 2234– CLB, 84 Civ. 3084–CLB, and 84 Civ. 6575–CLB)

## MEMORANDUM AND ORDER

[Motion for Tentative Class Certification for Purpose of Settlement Hearing, and Notice of Proposed Settlement]

BRIEANT, District Judge.

These consolidated cases, transferred to the Southern District of New York by the Judicial Panel on Multidistrict Litigation on February 27, 1984, arise out of the sale by insurance company subsidiaries of Baldwin-United Corporation of certain contracts known to the Court as single premium deferred annuities ("SPDAs"). These SPDAs were issued principally between 1979 and May 1983 by National Investors Life Insurance Company, an Arkansas insurance corporation, and University Life Insurance Company of America, an Indiana insurance corporation. The annuities were sold to the public on a nation-wide basis through various broker-dealers and other entities.

In July 1983, the two issuing insurance companies, as well as four companies which reinsured the SPDAs in part, were placed in rehabilitation. The ultimate corporate parent of these six companies, Baldwin-United Corporation, entered bankruptcy proceedings pursuant to voluntary and involuntary petitions for reorganization filed on September 26, 1983. During 1983 and 1984 SPDA purchasers filed more than 90 federal civil actions alleging fraud and/or violations of the federal and state securities laws and other pendent state law claims. Finding that the initial forty actions before it involved common questions of fact, the MDL Panel ordered that they be transferred to this district court for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407. *In re Baldwin-United Corporation Litigation, No. 581,* 581 F.Supp. 739 (J.P.J.L. 1984).

This Court held a pre-trial conference on April 3, 1984 and thereafter entered pre-trial orders approving the creation of a plaintiff's steering committee and providing, among other things, for the filing of sepa-

Lawrence Milberg, David Bershad, Jeffrey Bernstein, Milberg Weiss Bershad Specthrie & Lerach, New York City, for plaintiffs.

Richard E. Carlton, Melanie Cyganowski, Sullivan & Cromwell, New York City, for defendants.

William Carlisle Herbert, Hopkins & Sutter, Chicago, Ill., and Daniel J. Kornstein, Debra S. Weaver, Kornstein Veisz & Wexler, New York City, for intervenors-plaintiffs.

rate consolidated class complaints with respect to each of the unrelated broker-dealer defendants. Since that time, liaison counsel for plaintiffs and for defendants have been engaged actively in pursuing the litigation goals of the parties and have appeared frequently before the Court for coordination of pre-trial proceedings. Familiarity of the reader with all such prior proceedings is assumed.

A recent significant event with which the within motion is concerned is the filing beginning on September 21, 1984 of fourteen stipulations of settlement between plaintiffs and the defendants in fourteen of the actions (the "settling actions"). The parties to the proposed settlements now request the Court (1) to certify tentative or conditional classes solely for the purpose of considering the proposed settlement; (2) to conduct a fairness hearing on whether the proposed settlements should be approved; and (3) to order that notice of the hearing be sent to members of the proposed class and to resolve issues affecting the content of such notice.

*Class Certification*

Whether this Court should certify a conditional settlement class solely for purposes of approving or disapproving a settlement already formulated by the parties is a controversial issue. On one hand, the current edition of the *Manual for Complex Litigation*, § 1.46 (5th ed. 1982) ("Manual"), concludes that tentative classes for the purpose of settlement ordinarily should not be formed. *Id.* at 60. Similarly there is an apparent inconsistency between the language of Rule 23, F.R.Civ.P., and a mechanism whereby formal class certification would be bypassed until a date when first notice of the pendency of a class action and notice of a proposed settlement are sent simultaneously to prospective class members. *In re Franklin National Bank Securities Litigation*, 574 F.2d 662, 671–72, n. 6, *modified*, 599 F.2d 1109 (2d Cir.1978). Since Rule 23(c) requires that class certification take place "as soon as practicable after the commencement of an action," the practice of bypassing pre-settlement formal class certification is a subject of concern.[1] On the other hand, many courts have employed this practice in the name of judicial efficiency in order to facilitate apparently beneficial settlement proposals.[2]

■ For the reasons set forth below, this Court finds that under the circumstances of the cases at bar, tentative class certification for settlement purposes only is appropriate at this time and is in the interests of Justice.

The current edition of the Manual lists nine policy reasons in support of its conclusion that settlement classes ought not be certified:

"(1) Rule 23 does not expressly authorize formation of tentative classes for the purpose of settlement. (2) There usually can be no assurance that the class members will be adequately represented in the settlement negotiations until the court makes the findings, which are a condition precedent to the formation of a

1. *See Manual for Complex Litigation*, § 1.46 at 60 (5th ed. 1982) ("There is some doubt that this practice is authorized by Rule 23 as amended, even if one concedes that the courts are expected to develop new methods of employing the amended Rule 23").

2. *See e.g., Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 77, 78 L.Ed.2d 89 (1984); *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir.1982); *In re Beef Industry Antitrust Litigation*, 607 F.2d 167 (5th Cir.1979), *cert. denied*, 425 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981); *Girsh v. Jepson*, 521 F.2d 153 (3rd Cir.1975); *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *City of Detroit v. Grinnell*, 495 F.2d 448 (2d Cir.1974); *Brucker v. Thyssen-Bronemisza Europe N.V.*, 424 F.Supp. 679 (S.D.N.Y.1976), *aff'd*, 559 F.2d 1202 (2d Cir.1977); *Voege v. Ackerman*, 67 F.R.D. 432 (S.D.N.Y.1975); *West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710 (S.D.N.Y.1970), *aff'd*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971); *see also, In re Armored Car Antitrust Litigation*, 472 F.Supp. 1357, 1364, n. 5 (N.D.Ga.1979) ("The Manual's recommendation has, it appears, been more honored by breach than by compliance"), *modified and remanded on other grounds*, 645 F.2d 488 (5th Cir.1981).

class, after an opportunity for an evidentiary hearing. Formation of a tentative class for the purpose of settlement, with a requirement that the class members accept the settlement or opt out and litigate independently, might deny the members of the class the opportunity to show the inadequacy of the representation of the class by the representative party or parties agreeing to the settlement and their counsel. (3) The appropriate membership of the class and the identity of the members ordinarily should not be determined in the absence of an opportunity for hearing and judicial findings of fact and conclusions of law. Nor can there usually be any assurance that the tentative class will be composed of members without conflicting interests. Absent such findings and conclusions, it may be difficult to determine how many members there are in a class, who they are, the aggregate of claims of all members of the class, the amount of the individual claim of each member in relation to the total claims of all members of the class and, therefore, the amount of money that will be payable to each member of the class. This information would seem to be essential for a member to make any rational choice between whether to remain in the class and accept the benefits of the settlement or to opt out. (4) If the information relevant to liability, damages, and the expenses of preparation for trial and of trial is not developed, there usually cannot be a fair recognition in settlement negotiations of the potential liability of the party or parties opposing the class and the potential damages that might be recovered for the class. (5) Formation of a tentative class for the purpose of settlement preempts determination of the question whether the claim for relief should be litigated for the members of the class or should be the subject of further pretrial preparation, with a view toward securing a better settlement or a trial on the merits. It also preempts the question of which parties and counsel should represent the tentative class, since there must be an unofficially negotiated earlier settlement for the purpose of the formation of the tentative class. (6) The formation of a tentative class for the purpose of settlement denies the class member the choice, contemplated by amended Rule 23, to become a member of the proposed class for the purpose of litigation, with adequate representation as a member of litigating class. (7) Formation of such a class denies a member of the class the right to appear in the action as a party and to maintain the position of a litigating party. (8) Formation of such a class might lead to a long delay in preparing the case for trial, for those parties who desire to litigate their claims for relief. (9) In the absence of reasonable discovery conducted on an adversary basis by counsel representing the class, it is difficult to determine whether the proposed settlement has any relation to the economic facts of life relevant to the case." Manual for Complex Litigation § 1.46 at 60–61 (5th ed. 1982).

■ In essence, most of the perceived problems relied upon by the Board of Editors of the Manual concern the risk of a premature, inadequate settlement, and the possibility that class members may be induced to accept such an improvident settlement in the absence of sufficient information to make a reasoned choice. *In re Beef Industry Antitrust Litigation,* 607 F.2d 167, 176 (5th Cir.1979), *cert. denied,* 425 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). As Judge Wisdom stated: "The recommendations of the Manual in § 1.46 are intended to prevent collusion, individual settlement, 'buy-offs' where the class action is used to benefit some individual at the expense of absent members, and other abuses." 607 F.2d at 174. However, the law in this Circuit does recognize that deviation from this recommendation of the Manual may be reasonable in the appropriate case. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 77, 78 L.Ed.2d 89 (1984).

Among the policy reasons advanced by the Manual is the concern that class members will not have been represented adequately during settlement negotiations due to the fact that the negotiations precede judicial findings as to the prerequisites to class formation under Rule 23(a). *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–63 (2d Cir.1968), *vacated and remanded on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (court must examine whether plaintiffs' interests are antagonistic to interests of other class members); *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974) (court must examine whether class representatives possess the same interest and claim the same injury as other class members). The Court agrees that arguments in opposition to settlement classes have merit when they are addressed to the problem of inadequate representation or possible collusion among the named plaintiffs and some or all defendants. Rule 23(a)(4), F.R.Civ.P. However, in the case at bar, there is no danger of inadequate representation because all of the named plaintiffs have virtually identical claims for recovery which have been pursued by a steering committee and liaison counsel exclusively authorized to negotiate on behalf of the class by Pretrial Order No. 1 entered by this Court on April 11, 1984. The settlement class representatives have the same class interests as would a typical conditional class representative selected after a Rule 23 evidentiary hearing, and have no incentive to engage in collusion or recommend an improvident settlement in order to serve some unrelated purpose of their own.

This is not a case where several different counsel were competing for designation as class representatives; nor is this a case where defendants had the opportunity during negotiations to play one plaintiff's attorney off against another. *See City of Detroit v. Grinnell,* 495 F.2d 448, 465 (2d Cir.1974). These dangers were prevented by the early designation of a plaintiffs' steering committee in Pretrial Order No. 1, and the enumeration therein of the committee's powers and duties. No plaintiffs' counsel in this multidistrict action other than members of the steering committee have had the authority to negotiate for settlements on behalf of the proposed classes in the settling actions. Thus plaintiffs have spoken with one consistent voice during settlement discussions and one of the Manual's major concerns is absent.

In the instant case, as in so many of this type, the settling defendants do not consent to class certification, solely because in the event that the settlement fails, they prefer to remain free to assert various defenses aimed at the pleadings and at the same time oppose full certification of a plaintiffs' class. Defendants may object to the contention that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), F.R. Civ.P. While it ultimately might prove true that a class action is not the most efficient device for resolution of these cases, the possibility of such an ultimate finding by this Court, if made in the future after discovery and after an evidentiary hearing, should not be permitted, at this stage, to prevent SPDA holders from receiving notice of these proposed settlements, and a full hearing as to whether the Court ought to approve the proposed settlement.

Another of the policy reasons supporting the Manual's rationale against the tentative settlement class mechanism is that there can be no assurance that the membership of the class will be delineated appropriately or that the tentative class will not be composed of plaintiffs with conflicting interests. Again, this important concern is not implicated in the case at bar, because the facts show that all SPDA purchasers from the settling defendants are readily identifiable through the books and records of the issuing insurance companies, and all are treated alike by the settlements. The tentative class members thus have no conflicts

among themselves; they all stand to gain the exact same relief through the proportionate formula of recovery contained in the stipulations of settlement. Here, there is no danger comparable to that perceived in *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir.1982), where the court expressed its concern over preferential treatment afforded the named plaintiffs by the proposed settlement.

Yet another policy reason expressed in the Manual is that formation of a settlement class preempts determination of whether plaintiffs should continue to litigate their claims for relief with an eye towards a better settlement agreement or even a trial on the merits. In the stipulations of settlement filed herein, the class members have been provided with a full opportunity to object to the terms of the settlement while remaining a member of the class. Stipulations of Settlement, ¶ 16. As an alternative, plaintiffs can opt out of a settlement class and pursue their litigation goals either individually or as another putative class. This procedure complies with *City of Detroit v. Grinnell, supra,* and safeguards the individual freedom of choice of each SPDA purchaser from a settling defendant. Also it appears more sensible under the circumstances of this case to provide SPDA purchasers with the financial information contained in the settlement agreements now, so that they will have a more concrete basis for deciding whether to opt out of a plaintiffs' class, than to expect opt-out decisions to precede advisement of the possibility of settlement, as they typically must do under the policy of the Manual. *See In re Mid-Atlantic Toyota Antitrust Litigation,* 564 F.Supp. 1379, 1389 (D.Md.1983).

The Court of Appeals for the Second Circuit has ruled that it "refuse[s] to adopt a *per se* rule prohibiting approval when a class action settlement has been reached by means of settlement classes certified after the settlement, with notice simultaneous with that of the settlement ...." *Weinberger v. Kendrick,* 698 F.2d at 73. In so holding, the Court stressed

that the trial courts "are bound to scrutinize the fairness of the settlement agreement with even more than the usual care ... in order to meet the concerns noted in the Manual." *Id.* at 73. If the settlement agreement is found to be fair, reasonable and adequate—both in its substantive provisions and in the process of its creation—then the policy reasons behind the Manual's admonition become inapplicable.

Apart from the general difficulties which must be addressed, and indeed "scrutinized," under *Weinberger v. Kendrick, supra,* when a court considers whether to certify a tentative class for purposes of settlement only, a special objection has been raised by two SPDA purchasers, Bernard and Anna Shipman, who are named as plaintiffs in the consolidated amended class complaint filed in *Moore v. E.F. Hutton Group, Inc., et al.,* 84 Civ. 7197–CLB. The Shipmans oppose certification of a national settlement class on the ground that they possess "unique" legal rights under Washington state law and that these rights will not be adequately protected by the proposed class representatives in the settling actions. (Memorandum in Opposition to Proposed Settlement and to Proposed Settlement Class, filed October 24, 1984). Even if the Washington SPDA holders who purchased from one of the fourteen settling defendants do have special or unique state law claims, the Court cannot find that these potential class members should be denied access to settlement information or denied the opportunity to decide for themselves whether or not to opt out of the proposed class.

At oral argument on November 2, 1984, counsel for the Shipmans contended that, as a practical matter, SPDA purchasers will not exercise their opt-out rights. This contention is speculative. The Court has not been provided with any data to convince it that the standard methods of class notice and opportunity to request exclusion from a class are so ineffective that the Court should not even attempt to order that the Washington SPDA purchasers be notified and furnished with access to the

same information and opportunity available to others.

The better solution for this perceived problem would be to make certain that the form of notice approved by the Court is sufficiently clear and informative in its content and directions, a subject discussed more fully below. The Court has also examined the class complaint in *Moore v. E.F. Hutton Group, Inc., et al.* and finds that the federal complaint adequately embraces the pendent state law claims arising out of the sale of the SPDAs. The Shipmans' state law claims are not so special or unusual as to justify imposition by this Court of an involuntary exclusion from the settlement, compelling litigation and delay for Washington state SPDA purchasers from one of the broker-dealer defendants. The request by the Shipmans that any class definition exclude all persons who purchased National Investors Life Insurance Company SPDAs from E.F. Hutton Group, Inc. in the State of Washington during the relevant time period appears lacking in merit.

Similarly, objections voiced by Intervenor-Plaintiffs and plaintiff Judith A. Shay (who has proposed a statewide class in California) do not persuade the Court that a tentative class for settlement purposes should not be certified. The only objectors who have argued to the Court in opposition to the within motion are plaintiffs Shay, Bernard and Anna Shipman, and the Intervening guaranty associations. This small amount of opposition, in view of the relatively widespread publicity and the circulation of the settlement stipulations among plaintiffs' counsel, is another factor which supports approval of tentative class certification and the scheduling of a fairness hearing. *City of Detroit v. Grinnell*, 495 F.2d at 462.

■ Upon consideration of the proposed settlement presented to this Court for preliminary approval, the Court finds that it is at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard. The substantive terms of the proposed agreement call for a cash payment of approximately $138,000,000 to the members of the classes in the fourteen settling actions. According to the affidavit of plaintiffs' liaison counsel, sworn to October 10, 1984, this fund "represents a payment of approximately 30% of the damages sustained by members of the class when measured by the difference between the tangible assets in the hands of the rehabilitators and the liabilities of the rehabilitators to the members of the classes." In comparing the advantages of an immediate cash payment with the risks involved in long and uncertain litigation, it appears that the settlement is sufficiently substantial at this stage to present it to the SPDA purchasers and conduct a fairness hearing on notice.[3]

The terms of the settlement also appear fair because they do not differentiate among the broker-dealer defendants in any way that would suggest collusion or abuse. Each of the defendants is to pay in the same ratio and each class member is to obtain the same proportionate settlement regardless of which broker-dealer sold the SPDA. In addition, the fact that there are several broker-defendants who were presented with the opportunity to join these settlement stipulations and declined to do so implies that the settlement terms are favorable to the plaintiffs and that the negotiations preceding settlement operated in the required adversarial posture free of any possible collusion.

■ In order to supplement judicial examination of the substance of a compromise agreement, and because a court cannot conduct a trial in order to avoid a trial, attention must be paid to the process by which a settlement has been reached. *Weinberger*, 698 F.2d at 74. The negotiations in these settling actions were conducted on behalf of plaintiffs by experienced attorneys who are familiar with this type

---

**3.** Plaintiff's steering committee has informed the Court that its investigation had demonstrated many SPDA holders are at or near retirement age. Accordingly, a proposed settlement that offers an early resolution to this contest may be of greater benefit.

of litigation. As a consequence, their judgment is entitled to some weight. *Trainor v. Berner*, 334 F.Supp. 1143, 1149 (S.D.N.Y.1971). In the opinion of these experienced attorneys the settlement is reasonable when compared with an evaluation of the probability of ultimate success on the merits. As all parties to the actions are aware, one of the hotly contested issues which has not yet been decided is whether these SPDAs fit within the definition of a "security" for purposes of 15 U.S.C. §§ 77b and 78c. The Court finds that the negotiating parties considered this and other legal issues during the course of negotiations and, at least based on information presently available to the Court, they have been able to assess fairly the value of the claims asserted in the class complaints against the settling broker-dealer defendants.

■ Both the Intervenor-Plaintiffs (six state guaranty associations) and a California plaintiff (*Shay v. Merrill Lynch Pierce Fenner & Smith, Inc., et al*) object that the settlements are not within the range of reasonableness because formal discovery has not occurred. While it is true that full-fledged discovery has not been had, this is not always a bar to class certification or even to approving a settlement. *See Jones v. Amalgamated Warbasse House, Inc.*, 97 F.R.D. 355, 360 (S.D.N.Y.), *aff'd*, 721 F.2d 881 (2d Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984); *Plummer v. Chemical Bank*, 668 F.2d at 658; *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir.1981), *cert. denied*, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982); *Galdi Securities v. Propp*, 87 F.R.D. 6, (S.D.N.Y.1979).

■ In addition to discussions with defense counsel over a three-month period, plaintiffs' steering committee has had access to the expert testimony and other evidence received by the Arkansas and Indiana state courts supervising the development of rehabilitation plans.[4] Plaintiffs' steering committee has had available for its review various documents produced by some of the settling defendants in response to plaintiffs' initial discovery requests. The Stipulations of Settlement, at ¶ 25, provide that this production will continue during the notice period. Finally, a vast amount of relevant discoverable information was available through public documents concerning the financial condition of Baldwin-United Corporation and its subsidiaries. We believe that counsel availed themselves of all of these sources of information and conducted full adversarial negotiations, as they were authorized to do by Pretrial Order No. 1.

In light of the foregoing, the Court finds that a conditional class should be certified for the purpose of considering the proposed settlements. The requirements of numerosity, typicality, common questions of law or fact, and adequacy of representation have been met and the Court finds that, under Rule 23(b)(3), the tentative class procedure presents the most efficient method for adjudication of the immediate issues presented by the parties to the settling actions. The tentative class in each of the 14 settling actions shall be composed of those persons and entities, including the settling plaintiffs, (a) who purchased single premium deferred annuities ("SPDAs"), (i) which were issued by National Investors Life Insurance Company and University Life Insurance Company of America and/or reinsured by National Investors Pension Insurance Company, Mt. Hood Pension Insurance Company, National Equity Life Insurance Company, Inc. and S & H Life Insurance Company, all of which are affiliated with Baldwin-United Corporation, and (ii) which were purchased through

---

**4.** Of passing interest in any discussion of the need for discovery is the fact that the settlement negotiations have been conducted concurrently with the development of rehabilitation plans by court appointed rehabilitators in Indiana and Arkansas. The Indiana and Arkansas courts held public hearings in January, 1984. They approved rehabilitation plans by orders entered on March 23, 1984 and April 2, 1984 in Arkansas and by an order entered on May 23, 1984 in Indiana. All SPDA holders received information concerning the rehabilitation plans and the various options available under them in June, 1984.

the respective settling broker-dealer defendants in each such action during the period January 1, 1979 through July 13, 1983, each in his, her or its individual capacity and any and all collective representative capacities, and their representatives, assigns, heirs, executors, administrators, custodians, predecessors or successors in interest and any other person having any legal or beneficial interest in any of such SPDAs, and (b) who continued to hold such SPDAs on July 13, 1983.

The respective representatives of the Class as to each of the above captioned actions shall be and are hereby certified to be as follows:

1. *Donnelly* v. *A.G. Edward & Sons, Inc.*, 84 Civ. 0098–CLB, Robert C. Donnelly, Joseph Lowry and Eva Lowry;

2. *Miller v. Boenning & Scattergood, Inc.*, 84 Civ. 2234–CLB, Sandra S. Miller;

3. *Wert v. Blunt Ellis & Loewi, Inc.*, 84 Civ. 6575–CLB, Donald H. Wert, Elaine Meinecke, Howard M. Schudson, Jean Strike, Joseph Strike and Shirley Lerand;

4. *Moffatt v. Drexel Burnham Lambert Incorporated*, 84 Civ. 1673–CLB, Joseph T. Moffatt and Marvel S. Platoff;

5. *Moore v. E.F. Hutton Group, Inc.*, 83 Civ. 7197–CLB, Ronald A. Schooling, Steven Domeny, Rose Domeny, Dennis P. Attalla, Arnold D. Jones, Stephen H. Grossman, Randy F. Grossman, Philip Rhodes, Jr., Tadako Rhodes, Charles B. Scarborough, Barbara Scarborough, Sam Gesualdo and Sharon Gesualdo;

6. *Sokoloff v. Janney Montgomery Scott, Inc.*, 83 Civ. 8084–CLB, Sonia Sokoloff;

7. *Phillips v. Kidder, Peabody & Co., Inc.*, 83 Civ. 8475–CLB, Thomas G. Phillips, III;

8. *Factor v. Merrill Lynch & Co., Inc.*, 83 Civ. 7009–CLB, Harry Factor, Willa June Morgan, Douglas M. Mann, Lillie Lavin, Kenneth Tomnitz, David D. Ilgenfritz, Mary S. Ilgenfritz and Pemberton H. Shober, Jr.;

9. *Dippolito v. Moseley Hallgarten Estabrook & Weeden, Inc.*, 84 Civ. 3084–CLB, Mary Grace Dippolito;

10. *Ostin v. Oppenheimer & Co., Inc.*, 83 Civ. 7568–CLB, Nils Ostin and Helen E. Ostin;

11. *Kissel v. Parker/Hunter, Inc.*, 84 Civ. 2233–CLB, Edward Kissel, Jr.;

12. *Blumberg v. Prudential Bache Securities, Inc.*, 83 Civ. 7358–CLB, Lewis Levin, Rose Levin, Richard J. Boyle, Patricia A. Boyle, Daniel R. Cavalier and Naomi L. Cavalier;

13. *Shepperd v. Smith Barney Harris Upham, Inc.*, 83 Civ. 8474–CLB, Francis M. Bennett (successor in interest to Plaintiff Hambleton Shepperd); and

14. *Abrams v. Thomson McKinnon Securities, Inc.*, 83 Civ. 7359–CLB, Bernice V. Abrams, David Morris and Shirley Morris.

At this preliminary stage, the Court finds that all SPDA holders, in all fifty states, deserve to receive notice of the proposed settlements and have the opportunity to either object and remain in the class or request exclusion from the class. An order scheduling a hearing on the fairness of the stipulation of settlement is being filed simultaneously herewith. As the Intervenor-Plaintiffs did not become parties to these actions until October 5, 1984, after the dates upon which the stipulations of settlement were entered into by plaintiffs and the settling defendants, any reference in the stipulations of settlement to "parties" shall refer to the parties to the settling actions as of the dates of the stipulations of settlement, unless otherwise ordered by the Court.

*Class Notice*

The Court has fully considered the various forms of notice submitted to it by the settling parties as well as by the two objecting plaintiffs and the Intervenor-Plaintiffs. At the conference held on November 2, 1984, the Court requested that counsel who objected to the form of notice attached to the Order to Show Cause filed October 11, 1984, confer and present to the Court any requests for alteration. Counsel have

done so and the Court has approved a form of notice which is being filed simultaneously herewith.

■ The approved class notice fairly apprises "prospective class members of the class action's pendency, the relevant terms of the proposed settlement[s], and their options in connection with [this] case." *Weinberger*, 698 F.2d at 70. The notice adequately describes, among other things, the status of the rehabilitation proceedings, the litigation posture of the plaintiffs and the settling defendants, the settlement fund, and the application for attorneys' fees and expenses. In addition the notice advises the class members as to what effect the settlements will have on the future legal rights of class members.

■ As to the "opt-out" provisions contained in the notice, the Court finds that these instructions and explanations are clear and easy to follow. They inform class members that if requests for exclusion are not received in the manner specified, then the class member shall be bound by any judgments rendered by the Court pursuant to the settlement of the settling actions. The notice also provides that a settling class member who has not opted out may file objections and appear at the fairness hearing. It is proper for the notice to require opt-outs to be filed prior to the fairness hearing since this procedure "places potential objectors in no worse position than occurs when formal class certification precedes settlement ...." *Weinberger*, 698 F.2d at 72.

■ Finally, the notice will be mailed to each class member "who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176, 94 S.Ct. 2140, 2151, 40 L.Ed.2d 732 (1974), and will be published in the National Edition of the Wall Street Journal once a week for three consecutive weeks following the mailing of the primary notice. The individual mailings will be sent to class members at their last known addresses as set forth on the records of the Rehabilitators of the insurance companies. The use of bank and brokerage house records to compile lists for class action mailings is a procedure that has been approved by the Court of Appeals. *In re Franklin National Bank Securities Litigation*, 574 F.2d 662, 669–70, *modified on other grounds*, 599 F.2d 1109 (2d Cir.1978).

■ The Court finds that further detail in the content of the notice is not required in order to comply with Rule 5 of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. The parties to the settling actions have an interest in receiving notice of the total sum of the requested attorneys' fees, but it is not material under the circumstances of these cases to describe further how the fee will be allocated among the participating lawyers.

All of the foregoing is without prejudice to the findings the Court will make after conducting the fairness hearing, at which time all objections or arguments in opposition to the proposed settlements will be heard and considered and proponents must discharge their burden to prove that the proposed settlement agreements are fair and reasonable.

So Ordered.