Nelson CHATELAIN, Lee Castagnos, Jr., James Goodwin, John Sagers, Robert Buckalew, individually and on Behalf of all others similarly situated, Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES, INC.; Prudential–Bache Properties, Inc.; Sybedon Corporation; Mitchell Davis; Edwin Glickman; Bertram Lewis; Wilrock Appraisal & Consulting, Inc.; and Laventhol & Howarth, et al., Defendants.

No. 90 Civ. 5164 (MJL).

United States District Court, S.D. New York.

Nov. 5, 1992.

Aguirre & Meyer, San Diego, Cal. by Patricia A. Meyer, Law Offices of I. Stephen Rabin, New York City, by Joseph P. Garland, Law Offices of James C. Krause, San Diego, Cal., for plaintiffs.

Colton, Hartnick, Yamin & Sheresky, New York City by Susan E. Keyes, for defendants Sybedon, Glickman, M. Davis, and B. Lewis.

Skadden, Arps, Slate, Meagher & Flom, New York City by Richard Breslow, for defendants Prudential–Bache Properties, Inc., and Prudential–Bache Securities, Inc.

Rivkin, Radler & Kremer, Uniondale, N.Y. by Janice J. DiGennaro, for defendant Wilrock Appraisal & Consulting, Inc.

Orrick, Herrington & Sutcliffe, New York City by Barry Augenbraun, for defendant Laventhol & Howarth.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court is the motion of Plaintiffs [1], by their attorneys, brought pursuant to Fed.R.Civ.P. 23(e), for Court approval of the settlement of this action by the terms set forth in the Stipulation of Settlement (the "Stipulation") signed by the parties to the action on June 26, 1992. On August 17, 1992, this Court's Preliminary Order was filed setting the date for the hearing at which the Court would determine the fairness of the settlement, and directing counsel for the class to notify class members of the pendency of the action. 296 notices were mailed to class members representing persons who purchased 300 Class A limited partnership interests ("Units"). Of those members, no objections to the proposed settlement have been received by the Court, and seven persons representing nine Units have requested exclusion from the class. Based upon a hearing before this Court held on October 19, 1992, as well as on submissions by the parties, settlement of this action by the terms stated in the Stipulation is approved.

Also before the Court is the motion of Plaintiffs' counsel for an award of attorneys' fees, plus reimbursement of costs

---

**1.** Pursuant to this Court's Preliminary Order filed on August 17, 1992, this action was certified as a class action for settlement purposes under Fed.R.Civ.P. 23. The action is brought on behalf of a class consisting of all persons who purchased Class A limited partnership interests up through and including June 26, 1992, except for the Defendants in the action (the "Class").

and expenses. The request for fees is granted in part and denied in part, and the request for costs and expenses is granted.

## BACKGROUND

On December 29, 1989, this class action was commenced in the United States District Court for the Southern District of California. The parties were identical to the present parties, but included one more defendant, National Union Fire Insurance Company of Pittsburgh, Pa. This defendant was voluntarily dismissed by Plaintiffs in April, 1992. It should also be noted that Defendant Laventhol is engaged in bankruptcy proceedings at the time of this action.

Plaintiffs filed an amended complaint on April 12, 1990. Plaintiffs' First Amended Complaint alleges that the Defendants violated Sections 12(2) and 15 of the Securities Act of 1933, and Section 10(b) of the Securities Exchange Act of 1934 and the rules and regulations of the Securities and Exchange Commission promulgated thereunder. It also alleges that Defendants violated the common law in connection with the sale of Units by misstating or failing to disclose material facts in the Confidential Private Placement Memorandum issued in connection with the offering of those Units. These common law charges allege fraud, negligent misrepresentation, and breach of fiduciary duty. Further, Plaintiffs allege accounting malpractice by Laventhol & Howarth, and professional negligence against Wilrock Appraising.

On July 12, 1990, the Action was transferred on motion by Defendants to the United States District Court for the Southern District of New York.

In October, 1991, Plaintiffs sought leave to file a Second Amended Complaint alleging the above causes of action as well as claims under the Federal Racketeer Influenced and Corrupt Organizations Act, common law claims, and further claims under Section 10(b) which Plaintiff sought to reinstate as timely under Section 27A of the 1934 Act as amended in 1991. Plaintiffs also sought to add additional plaintiffs as intervenors. These requests were denied at a pre-trial conference in November, 1991.

The Defendants at all times have denied allegations of wrongdoing and liability.

In the Court's Preliminary Order of August 17, 1992, this action was certified as a class action for settlement purposes on behalf of all parties who purchased Units up through and including June 26, 1992—the date of the Stipulation of Settlement. In that order, a settlement hearing was scheduled for October 19, 1992, for the purposes of determining whether the settlement is fair, reasonable, and in the best interests of the class. At that hearing, the Court would also consider the application of Plaintiffs' counsel for an award of fees and expenses. The Preliminary Order mandated that notice of the pendency of the hearing and proposed settlement be sent to class members on or before August 21, 1992.[2]

## DISCUSSION

I. *The Proposed Class Settlement Agreement*

■ The exact terms of the proposed settlement are set forth in the Stipulation of Settlement, dated June 26, 1992, which is incorporated herein by reference. In sum, the settlement provides that Defendants will pay a total of $1,891,667, plus income and interest accrued, in escrow for the benefit of the class. The settlement fund will also include a $600,000 claim against Laventhol, which is presently engaged in bankruptcy proceedings.

The amount of the settlement fund will be reduced by the amount awarded to Plaintiffs' counsel for fees and expenses incurred, including the costs of administration of the settlement fund such as the cost of notice to the class and taxes due.

Class members filing timely Proofs of Claim shall receive money from the settlement fund based on their pro rata owner-

---

**2.** The specific requirements of the notice to class members and the accompanying instruc-

tions to class members are located in the Preliminary Order of August 17, 1992.

ship of Units. Special provisions have been made in Section II(F) of the Stipulation of Settlement for the allocation of funds when a Unit has been owned by more than one claimant. Within sixty days after the disbursement of funds, the parties to this action shall submit a report on the administration of the settlement fund to the Court. At that time, they will also apply for an order barring all claims against the parties related to the administration of the settlement.

The Stipulation of Settlement contains provisions that an award of attorneys' fees shall not exceed 30% of the settlement fund, and that an award of expenses shall not exceed $25,000. Attorneys seek approximately 30% of the settlement fund in fees, and $13,726.74 as a reimbursement of expenses.

The Stipulation of Settlement provides Defendants with the option of withdrawal from the proposed settlement upon the occurrence of certain conditions. The specific conditions for this are sealed and impounded. These rights were not exercised by Defendants.

Settlement of this action is in the best interests of the parties involved. It will confer a substantial benefit upon the class, and it will end a complex and costly litigation. Plaintiffs' counsel is experienced in these matters, and has expressed their judgment that the proposed settlement is fair, reasonable, and in the best interests of the class.

## II. *The Standards for Judicial Approval of Class Action Settlements.*

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action shall not be compromised without court approval. Fed.R.Civ.P. 23(e). In general, courts look upon the settlement of lawsuits with favor because it promotes the interests of litigants by saving them the expense of trial, and it promotes the interests of the judicial system by reducing the burdensome strain upon it. *Newman v. Stein,* 464 F.2d 689 (2d Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). Compromise is particularly appropriate in complex class actions. *In re Union Carbide Corp. Securities Litigation,* 718 F.Supp. 1099, 1103 (S.D.N.Y.1989).

In deciding whether to approve a proposed class action settlement, the court must determine whether the compromise is fair, reasonable and adequate. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). Also, the court has the fiduciary duty of insuring that the settlement is not the product of collusion. *In re Warner Communications Sec. Litig.,* 798 F.2d 35, 37 (2d Cir.1986). Attention must be paid to the negotiating process which resulted in the proposed settlement. *Weinberger,* 698 F.2d at 74. The settlement must be the result of arm's length negotiations, and plaintiffs' counsel must be experienced and have engaged in adequate discovery necessary to represent the class effectively. *Id.* A strong initial presumption of fairness attaches to the proposed settlement when it is shown to be the result of this type of a negotiating process and when the number of objectors is small. *Ross v. A.H. Robins Co., Inc.,* 700 F.Supp. 682, 683 (S.D.N.Y.1988).

A substantial factor in determining the fairness of the settlement is the opinion of counsel involved in the settlement. *Cannon v. Texas Gulf Sulphur Company,* 55 F.R.D. 308 (S.D.N.Y.1972) (opinion of counsel should be given "great weight"). In the instant case, both class counsel and defense counsel satisfactorily represented their clients in negotiating the Stipulation of Settlement. In affidavits submitted by counsel, it is stated that they engaged in arm's length negotiations for eight months, and are satisfied with the proposed settlement. These opinions were considered in approving the Stipulation of Settlement.

The court must also consider factors such as the nature of the class, possible defenses, the situation of the parties, the exercise of business judgment, and most importantly, the strength of the plaintiffs' case against the amount offered in the settlement, but the court must stop its inquiry short of a complete trial. *City of*

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974). Specifically, the Second Circuit has identified nine factors to be considered in determining whether to approve the settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463. We will now consider these criteria.

### A. The Complexity, Expense and Likely Duration of the Litigation.

This action was brought over two and one-half years prior to the signing of the Stipulation of Settlement, yet remains at an early stage in the litigation. Although discovery has been conducted pursuant to the settlement, much more would remain if the action proceeded to trial.

The factual and legal complexity of this case is great. Plaintiffs' amended complaint is fifty-seven pages in length. Despite the depth of the amended complaint, Plaintiffs' counsel questions whether Plaintiffs would be able to establish liability on the part of Defendants.

The additional costs to class members of protracted litigation would be substantial. A judgment in favor of the class is not guaranteed, and even if had, would be reduced by the costs of litigation. The class would also be faced with the possibility of appellate litigation, which would still further increase the costs and uncertainty of this action. Therefore, the complexity, expense and likely duration of this litigation is great, and warrants a settlement of this action.

### B. The Reaction of the Class to the Settlement.

Notices of the proposed settlement and proofs of claim were mailed to all class members on or before August 21, 1992, as ordered by this Court. In these mailings, class members were informed of: the background of the litigation, the pendency of the class action, the terms of the proposed settlement and the right to receive payment, the right to request exclusion from the class, the date and purpose of the settlement hearing, the right to appear and be heard at that hearing, and the potential amount of attorneys' fees to be paid. The last day to request exclusion was October 9, 1992—ten days before the settlement hearing. Only seven out of 296 have requested exclusion, representing nine of the 300 Units sold. No class members wrote in objection or appeared at the settlement hearing in protest of the settlement. This total absence of objection by class members is persuasive evidence of the fairness of the settlement. *See Grinnell*, 495 F.2d at 462.

### C. The Stage of the Proceedings and the Amount of Discovery Completed.

Although this litigation is in its early stages, it has been ongoing for two and one-half years. During that time, discovery has been conducted, both before and after settlement negotiations began.

Negotiations between experienced counsel have resulted in a settlement which both counsel recommend be approved. Counsel has engaged in limited discovery in the good faith belief that the class would obtain no benefit from substantial additional discovery. While limited discovery has been conducted here, even "[t]he absence of formal discovery has not always prevented consideration of settlement." *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 362 (S.D.N.Y.1988); *See also In re Baldwin–United Corp.*, 105 F.R.D. 475, 483 (S.D.N.Y.1984); *Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 360 (E.D.N.Y.1982), *aff'd*, 721 F.2d 881 (2d Cir.1983), *cert. denied*, 466 U.S. 944,

104 S.Ct. 1929, 80 L.Ed.2d 474 (1984). The Court must find that counsel had sufficient information to act intelligently on behalf of the class. *Schwartz*, 119 F.R.D. at 362. Given that document discovery and extensive discussions have already been conducted and resulted in the Stipulation of Settlement, all counsel are undoubtedly acting with a firm grasp of the strengths and weaknesses of the case.

### D. The Risks of Establishing Liability.

In a complex securities class action such as this, there are undoubtedly considerable legal obstacles confronting plaintiffs in attempting to establish liability. These obstacles would remain were the settlement not approved.

As class counsel admits, despite the strengths of plaintiffs' case, there are substantial risks present. Plaintiffs would have to show that misrepresentations and omissions made by Defendants were false and that Defendants made them with knowledge of their falsity or reckless disregard for their falsity. Further, class counsel states in its Memorandum of Points and Authorities in Support of Motion for Final Approval ("Plaintiffs' Memo"), at p. 6, and defense counsel states in its Memorandum of Law in Support of the Proposed Settlement ("Defendants' Memo"), at p. 13, that Plaintiffs would have to overcome, *inter alia*, a substantial statute of limitations defense.

In view of the difficulties of litigating this case, Plaintiffs bear the risk of losing at trial or having the case dismissed prior to trial. The risks of continued litigation and the benefits of immediate settlement indicate that settlement is in the best interests of the class.

### E. The Risks of Establishing Damages.

The amount of recovery Plaintiffs would have if they prevailed at trial is uncertain. In class actions, the "complexities of calculating damages increase geometrically." *Bonime v. Doyle*, 416 F.Supp. 1372, 1384 (S.D.N.Y.1976), *aff'd*, 556 F.2d 554 (2d Cir.), *cert. denied*, 434 U.S. 924, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977). In quantifying damages and causation in a securities case, the parties will argue that different theories be employed. Plaintiffs will argue for the potential increased price of the stock following revelation of Defendants' wrongdoing; Defendants will argue that such an increased price is due to factors unrelated to the revelation, such as changed market conditions. This complex issue would necessitate the use of expert witnesses to determine the existence and amount of actual damages. There will be much debate on this critical issue. *See, e.g., In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 744–5 (S.D.N.Y.1985), *aff'd*, 798 F.2d 35 (2d Cir.1986); *Bonime*, 416 F.Supp. at 1384.

### F. The Risks of Maintaining the Class Action Through the Trial.

The class here has been certified purely for the purposes of settlement. If litigation proceeds, this certification will be contested by Defendants. Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time.

### G. The Ability of the Defendants to Withstand a Greater Judgment.

The collection of a judgment in this case is a significant factor in approving the settlement. "[T]he 'prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures.'" *In re Warner*, 618 F.Supp. at 746 (quoting *City of Detroit v. Grinnell Corp.*, 356 F.Supp. 1380, 1389 (S.D.N.Y.1972), *aff'd in part, rev'd in part*, 495 F.2d 448 (2d Cir.1974)). In Plaintiffs' Memo, at p. 6, it is submitted that Defendant Sybedon lacks significant assets or insurance, and that Defendant Wilrock has only limited insurance. Further, Defendant Laventhol is engaged in bankruptcy proceedings. "The class must especially consider this fact in its decision regarding approval of the settlement." Plaintiffs' Memo at p. 6. The certainty of payment through settlement points in favor of approval of the proposed settlement.

H.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation.

The amount of the best possible recovery is speculative. For a class of this size, the amount of the settlement fund is substantial. According to Defendants' Memo, p. 14, the total initial investment by the class was $30 million. The amount recoverable, if any, is uncertain. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. This is especially true in light of the attendant risks of litigation.

The risks of litigation are what ultimately leads to settlement. *Smith v. Vista Org., Ltd.*, No. 89 Civ. 0048, 1991 WL 152612 (S.D.N.Y. July 30, 1991). These risks are delay, effort, and expense, as well as the risk of defeat. Experienced counsel for both parties have negotiated at arm's length while possessing all relevant information needed to proceed with litigation or settle. They recommend that the proposed settlement be approved. As discussed, their views are entitled to considerable weight. In light of the attendant risks of litigation, the settlement fund is reasonable and indicates that the proposed settlement should be approved.

III.  *Attorneys' Fees.*

██  Plaintiffs' counsel moves for an award of attorneys' fees and reimbursement of costs and expenses. Plaintiffs' counsel seeks $567,489.95, or approximately 30%, of the settlement fund in fees. In calculating fees, counsel uses the lodestar-multiplier method where hours worked are enhanced by a certain "multiplier" in determining the number of hours the firm will charge at its current billable rates. They seek the use of multipliers of between 2.00 and 1.70 for certain partners, and multipliers of between 1.5 and 1.00 for certain associates. They also seek reimbursement of $13,726.74 in costs and expenses. Both

of these amounts are to be deducted from the settlement fund.

Courts have found disfavor with lodestar-multipliers, and favor with the percentage method, in both "common fund cases" and statutory fee-shifting cases. *See, e.g., City of Burlington v. Dague*, — U.S. —, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (lodestar amount in statutory fee shifting cases not to be enhanced to reflect the risk of contingency); *Pennsylvania, et al. v. Delaware Valley Citizens' Council for Clean Air, et al.*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (it is unnecessary to enhance the lodestar figure because it contains the relevant factors constituting a "reasonable" attorney's fee); *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984) (under the "common fund doctrine," a reasonable fee is based on a percentage of the fund bestowed on the class); *In re RJR Nabisco*, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. August 24, 1992) (courts increasingly use the percentage basis over the lodestar approach in awarding attorney's fees). Indeed, in *In re Union Carbide Corp. Consumer Prods. Business Sec. Litig.*, 724 F.Supp. 160 (S.D.N.Y.1989), although Chief Judge Brieant applied a lodestar-multiplier, the court criticized that method. The court stated that the lodestar-multiplier method is "not an ideal way to fix fees" because it wastes court time in determining the multiplier, lacks predictability, and provides little incentive to arrive at an early settlement. *Id.* at 166. This Court declines to apply the lodestar method, and instead favors the use of the straight percentage of recovery method.

██  Courts in this circuit grant awards of 15% to 50% of the entire settlement fund in class actions. *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735 (S.D.N.Y.1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986), stated an amount of 20%–50%, and gave an amount totalling less than 25%. *In re Union Carbide Sec. Litig.*, 724 F.Supp. 160 (S.D.N.Y.1989), stated an amount of 15%–30%, and gave an amount totalling 27%. This Court finds that an amount of 28%, or $529,666.76, adequately

compensates class counsel for the risk of taking the instant action on a contingency basis. The requested costs of $13,726.74 are fully granted.

 In approving applications for attorneys' fees, courts in this circuit examine the following factors:

(1) time and labor expended by counsel; (2) magnitude and complexity of the litigation; (3) risk of the litigation; (4) quality of representation; (5) requested fee in relation to the settlement; and (6) public policy considerations.

*In re Warner*, 618 F.Supp. at 746–47. *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir.1974).

These factors, as indicated in the above analysis approving the settlement, turn in favor of the award granted to Plaintiffs' counsel. Plaintiffs' counsel prosecuted this action for two and one-half years, and engaged in factual research and negotiations with Defendants' counsel for eight months. The litigation involves numerous claims; the risk and complexity of this litigation has been discussed above and sworn to by counsel from both parties in affidavits. Plaintiffs' counsel has obtained a settlement which was approved by the Court as fair, reasonable, and in the best interests of the class. The fee awarded is 28% of the settlement fund, an amount justified in contingency cases such as this. As a result of Plaintiffs' counsel, the class has received a substantial benefit. Finally, such an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws. *In re Warner*, 618 F.Supp. at 750; *See also, Eichler v. Berner*, 472 U.S. 299, 309–10, 105 S.Ct. 2622, 2628, 86 L.Ed.2d 215 (1985). For these reasons, attorneys' fees and costs are awarded to Plaintiffs' counsel in the above stated amounts.

## CONCLUSION

For the reasons stated above, the settlement agreement in this action is approved pursuant to Fed.R.Civ.P. 23(e) as fair, reasonable, and in the best interests of the Plaintiff-class. In addition, based on the submissions of counsel and the record of the settlement hearing held on October 19, 1992, the motion of Plaintiffs' counsel is granted in part, and they are awarded fees in the amount of $529,666.76 and reimbursement for costs and expenses in the amount of $13,726.74. Accordingly, the Order and Final Judgment submitted by the parties will be entered by the Court.

It is SO ORDERED.