BRENNER v MARATHON OIL COMPANY

Docket No. 188758. Submitted October 2, 1996, at Lansing. Decided March 4, 1997, at 9:10 A.M.

Patricia J. Brenner and others brought an action that later was certified as a class action in the Hillsdale Circuit Court against Marathon Oil Company and others, alleging breach of contract with respect to the plaintiffs' royalty interests in oil and gas wells. The class grew to include over two hundred members. The court, Michael W. LaBeau, J., approved a settlement proposed by the plaintiffs' counsel and the defendants, but rejected by 133 of the 152 plaintiffs responding to the notice of settlement. All named plaintiffs and the plaintiffs' negotiating team rejected the settlement. Brenner and some of the other plaintiffs appealed.

The Court of Appeals *held*:

The trial court abused its discretion in approving the settlement over the objections of an overwhelming majority of the plaintiffs.

Reversed and remanded for further proceedings.

1. ACTIONS — CLASS ACTIONS — COURT APPROVAL OF SETTLEMENTS.

The approval of a settlement in a class action is at the trial court's discretion and is reviewed on appeal for abuse of discretion (MCR 3.501[E]).

2. ACTIONS — CLASS ACTIONS — COURT APPROVAL OF SETTLEMENTS.

A trial court before approving a settlement in a class action considers whether the terms of the settlement are fair and reasonable, whether the settlement is a product of fraud, overreaching, or collusion, the relative strengths and weaknesses of the plaintiffs' claims, and the stage of the proceedings (MCR 3.501[E]).

3. ACTIONS — CLASS ACTIONS — COURT APPROVAL OF SETTLEMENTS.

The approval by a trial court of a settlement in a class action may represent an abuse of discretion where the settlement is opposed by an overwhelming majority of the plaintiffs that includes all named plaintiffs and the members of the plaintiffs' negotiating team (MCR 3.501[E]).

*Parker & Adams, P.C.* (by *James D. Adams*), for Patricia J. Brenner and others.

*Mika, Meyers, Beckett & Jones, P.L.C.* (by *John M. DeVries* and *Elizabeth K. Bransdorfer*), for Marathon Oil Company and others.

*Foster, Swift, Collins & Smith, P.C.* (by *Webb A. Smith*), for James A. Knight.

Before: MCDONALD, P.J., and BANDSTRA and C. L. BOSMAN*, JJ.

BANDSTRA, J. In this class action, plaintiffs sought damages for breach of contract from defendants with respect to plaintiffs' royalty interests in certain oil and gas wells. Plaintiffs appeal as of right a final judgment that awarded them $300,000 as a complete compromise of their claims. We reverse and remand.

Plaintiffs' initial complaint was filed in 1990; a motion for class certification was granted in 1991. By stipulation of the parties, plaintiffs were permitted to file an amended complaint in 1992. Late in 1993, certain defendants moved for summary disposition, but that motion was held in abeyance pending the outcome of settlement negotiations.

In March of 1994, plaintiffs' prior counsel notified the class that counsel for the parties had reached a proposed settlement that was not endorsed by the named plaintiffs. The named plaintiffs sent out ballots to the class; seven unnamed plaintiffs voted to accept the proposed settlement and 104 opposed it. After a hearing on the proposed settlement, the court

---

* Circuit judge, sitting on the Court of Appeals by assignment.

decided not to approve it, reasoning that the damage calculations upon which it was based were speculative and that it should go to a jury for decision. Shortly thereafter, the parties stipulated to allow plaintiffs' counsel to withdraw and permit substitution of new counsel.

After partial summary disposition was granted against plaintiffs with respect to some of their claims, the case went to mediation. The named plaintiffs and the negotiating team recommended rejection of the settlement, and plaintiffs' counsel explained to the class that rejection of the settlement could lead to mediation sanctions. Defendants accepted the mediators' evaluation of the case and proposed a settlement based upon the mediation evaluation. Of the 117 class members that responded to balloting, 108 rejected the mediation and nine accepted. A significant majority of those voting to reject the mediation also voted to accept plaintiffs' counsel's proposal of settlement in an amount significantly higher than that offered by defendants.

At a hearing on the proposed settlement offers, plaintiffs' expert witness testified regarding the report he had prepared for the case. Following cross-examination of this witness, a letter was also submitted from an expert witness who had conducted a study on behalf of defendants. In a bench opinion, the court decided not to accept the mediation evaluation as a proposed settlement. The court opined that the testimony offered by plaintiffs' expert was problematic, but that, on the other hand, the mediation evaluation was too low.

A new settlement proposal was prepared largely on the basis of that opinion. This proposal was accepted

by defendants, and plaintiffs' counsel stated at a hearing, where the proposal was placed on the record, that he would "recommend to the class that they accept [the] settlement."[1] The parties agreed that the required notice of the settlement would be sent out, that trial would be canceled, that all further discovery and trial preparation would be halted, and that the case would be dismissed upon the court's approval of the settlement and payment by defendants.

Plaintiffs' counsel sent the notice to class members with his recommendation that the proposed settlement be accepted but also noting that the named plaintiffs and the negotiating team for the class recommended that the settlement not be accepted. Again, plaintiffs' counsel reminded class members that mediation sanctions might be imposed against them if the settlement was not accepted and further explained that the expert witness that plaintiffs proposed to offer might not be qualified to testify. After certain class members sent out a mailing explaining the facts as they understood them, 152 of the more than 200 class members responded to the balloting, with 133 opposing the settlement offer (87.5%) and nineteen accepting it (12.5%).[2] At another settlement hearing, plaintiffs' counsel related these vote results to the court and suggested changes to the settlement

---

[1] In light of this statement and the entire hearing transcript, we do not conclude that counsel accepted the proposal on behalf of plaintiff class as defendants argue.

[2] Not surprisingly, the parties argue about the nonrespondents, with defendants claiming their nonresponse indicated that they approved the settlement offer and plaintiffs claiming their nonresponse indicated that they did not support it. In the absence of anything in the record to support either position, we conclude that the nonrespondents probably opposed and supported the proposed settlement in about the same ratio as did the respondents.

package that might lead to greater support among class members. Defendants presented testimony regarding the reasonableness of these changes and also argued that the mailing sent out by some class members was "factually flawed, biased and prejudiced."[3]

Following this hearing, the court issued a bench opinion approving the proposed settlement as fair and reasonable. The court noted that plaintiffs' proposed expert witnesses had limitations likely to cause concern to a jury, that a no cause of action verdict was a possibility, that it was likely that any verdict in plaintiffs' favor would be so low that substantial mediation or offer of judgment sanctions would result, and that there would be significant litigation costs and other additional expenses if the case proceeded further. The court recognized the strong feelings that plaintiffs had about their case and the belief that defendants had cheated them. However, the court characterized plaintiffs' perceptions of their chances of success as unrealistic, being based on emotion rather than detached and objective factual analysis.

As this rather lengthy summary of the proceedings in this case illustrates, both the lower court and counsel for the parties worked long and hard to fashion a reasonable settlement proposal, considering the strengths and weaknesses of plaintiffs' case. Notwithstanding this effort, however, in the end, a large majority of the class members responding rejected the proposed settlement. The question before us is

---

[3] Defendants do not argue that the trial court erred with regard to the notice sent by plaintiffs' counsel. See MCR 3.501(E). Defendants point to no authority suggesting that class members are disallowed from lobbying for or against a proposed settlement, arguing in the manner they see fit.

whether the trial court appropriately approved the proposed settlement, thus denying plaintiffs the opportunity to proceed to a jury trial.

The applicable court rule provides:

> Dismissal or Compromise. An action certified as a class action may not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to the class in such manner as the court directs. [MCR 3.501(E).]

MCR 3.501(E) has not been the subject of apposite analysis by Michigan courts and, in the absence of available Michigan precedents, we turn to federal cases construing the similar federal rule[4] for guidance. *McCalla v Ellis*, 180 Mich App 372, 377-378; 446 NW2d 904 (1989). Under the federal rule, the acceptance of a settlement in a class-action case is within the trial court's discretion and is reviewed on appeal for an abuse of discretion. *Laskey v Int'l Union (UAW)*, 638 F2d 954, 956 (CA 6, 1981). There is an overriding public interest in favor of settlements in class-action lawsuits. *Kincade v General Tire & Rubber Co*, 635 F2d 501, 507 (CA 5, 1981). Factors to be considered by a trial court before approving a settlement include whether the settlement's terms are fair and reasonable, whether the settlement is a product of fraud, overreaching, or collusion, the relative strengths and weaknesses of the plaintiffs' claims, and the stage of the proceedings. *Priddy v Edelman*, 883 F2d 438, 447 (CA 6, 1989); *In re A H Robins Co*,

---

[4] FR Civ P 23(e) provides: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

*Inc,* 880 F2d 709, 748 (CA 4, 1989). Having considered a settlement offer in the context of other factors, the trial court does not necessarily abuse its discretion by accepting a settlement over the objections of the named representatives of a class. *Laskey, supra;* see, also, *Bryan v Pittsburgh Plate Glass Co,* 494 F2d 799, 803 (CA 3, 1974).

In this case, opposition to the proposed settlement was not limited to plaintiffs' named representatives or the class' negotiating team; opposition was also voiced by the overwhelming majority of those class members responding to the balloting process. Defendants cite precedents reasoning that the reaction of a class to a settlement proposal is not dispositive but only one of many factors a trial court must consider in deciding whether to approve the settlement. See, e.g., *Chatelain v Prudential-Bache Securities, Inc,* 805 F Supp 209, 213 (SD NY, 1992). However, the precedents relied upon either do not indicate the size of the objecting group of class members or they involved situations where objection was raised by only a small group of class members. *Priddy, supra* (size of objecting group not mentioned); *A H Robins, supra* at 749 (about five percent were against the settlement); *Laskey, supra* ("[s]ignificantly, only seven out of 109 made any kind of objection"); *Bryan, supra* (about twenty percent of the class objected to the settlement); *Masterson v Pergament,* 203 F2d 315, 330 (CA 6, 1953) (apart from the appellants, no other shareholders within the class objected to the proposed settlement); *Chatelain, supra* (only seven of 296 class members requested exclusion or otherwise objected to the settlement proposal); *Howard v McLucas,* 597 F Supp 1504, 1512 (MD Ga, 1984), aff'd

in part, vacated in part, and remanded, 782 F2d 956 (CA 11, 1986) (about two percent of the class objected to the proposed settlement).

These precedents stand for the proposition that the nature and extent of the objections raised by a minority group of shareholders should be considered among other factors by the trial court in deciding whether to approve a proposed settlement that is acceptable to the majority of the class. They do not, however, address the question at issue here, whether a settlement may be approved by the trial court when the overwhelming majority of class members object to that settlement.

We find guidance on this issue in *Pettway v American Cast Iron Pipe Co*, 576 F2d 1157 (CA 5, 1978). While recognizing that "a settlement can be fair notwithstanding a large number of class members who oppose it," the *Pettway* court considered a number of objectors to be a "significant consideration." *Id.* at 1215. The court concluded, on the facts before it, that approval of the settlement was an abuse of discretion:

> [W]e must conclude that the district court was required to withhold its approval of this agreement. All of the active named plaintiffs, all of the elected representatives [for the class], and 70 percent of the [class] objected to the settlement. . . . If 100 percent of the [class] had objected we could say with complete confidence that "the class" has not settled its claim. At least under the limited circumstances of this case, our confidence is not shaken when the figure is reduced to 70 percent. Where such a large percentage of the class objects, there must be something, not necessarily rotten in Denmark, but unfair to the principality consisting of a class as a whole. The district court abused its discretion in approving this back pay agreement. [*Id.* at 1217-1218.]

As in *Pettway*, the settlement proposal approved by the trial court was opposed by the named plaintiffs and the negotiating team; it was opposed by an even greater proportion of the members of the plaintiff class. As in *Pettway*, we conclude that approval of the settlement proposal over the objections of the majority of class members, under the circumstances of this case,[5] was an abuse of discretion.

This is not to say that the trial court (or counsel for plaintiffs) was incorrect in recognizing the weaknesses of plaintiffs' case, the possibility of sanctions against plaintiffs if the case continues, or that, as a result of these considerations and others, the proposed settlement was fair and reasonable. It could well be that, following trial, the objecting plaintiffs will rue the day they rejected the settlement proposal. However, we agree with plaintiffs that they have a right to their day in court before a jury.

We reverse the order of the trial court approving the settlement proposal and remand for further proceedings. We do not retain jurisdiction.

---

[5] As noted, the proposed settlement was opposed by the named plaintiffs, the class' negotiating team, and the overwhelming majority of class members who responded to balloting. We express no opinion with respect to the propriety of approving a settlement opposed by a smaller group of class members, albeit a majority, in a case of different facts and circumstances. See, e.g., *TBK Partners, Ltd v Western Union Corp*, 675 F2d 456, 462-463 (CA 2, 1982) (class settlement approved although between fifty-four and fifty-eight percent of class members were in opposition).