McCALLA v ELLIS

Docket Nos. 103285, 106084. Submitted August 3, 1989, at Lansing. Decided October 2, 1989. Leave to appeal applied for.

Joyce McCalla brought a quid pro quo sexual harassment civil rights action in the Washtenaw Circuit Court against Richard Ellis, Electrolux Corporation and another. Ellis was McCalla's supervisor when they both worked for Electrolux. The court, Ross W. Campbell, J., entered a judgment against Electrolux and awarded plaintiff attorney fees. Electrolux and plaintiff each appealed and the appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. Any unwelcome sexual advance or physical conduct of a sexual nature, including rape, may be the basis for a sexual harassment claim under the Civil Rights Act.

2. The elements of a quid pro quo claim of sexual harassment against an employer under the Civil Rights Act are 1) the employee belongs to a protected group, 2) the employee was subject to the unwelcome sexual harassment, 3) the harassment was based on sex, 4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions or privileges of employment, and 5) respondeat superior. Plaintiff proved the fourth element by proving her involuntary resignation to escape an intolerable situation, a fact deemed to be a constructive discharge or firing. Plaintiff proved the fifth element by showing that Ellis, the perpetrator of the rape, had authority over plaintiff and that the authority assisted him in accomplishing the rape. Electrolux is liable despite a lack of notice of Ellis' proclivity prior to the incident.

3. The court's instructions were proper as was the court's refusal to instruct on the criminal sanctions for rape.

4. The testimony of a witness that in her opinion the sexual activity was unwelcome and the testimony of two witnesses

REFERENCES

Am Jur 2d, Appeal and Error § 129; Evidence § 251; Job Discrimination §§ 789 *et seq.*

On-the-job sexual harrassment as violation of state civil rights law. 18 ALR4th 328.

that in their opinion plaintiff was credible did not, under the circumstances, prejudice the trial requiring a reversal.

5. Plaintiff was entitled to recover damages for injuries not compensated for by workers' compensation. The court erred in not holding a hearing and making a finding of what those injuries were.

6. The record did not reflect that the award of attorney fees constituted an abuse of discretion.

Affirmed but remanded with instructions.

1. CIVIL RIGHTS — SEXUAL HARASSMENT — RAPE.

Any unwelcome sexual advance or physical conduct of a sexual nature, including rape, may be the basis for a sexual harassment claim under the Civil Rights Act.

2. CIVIL RIGHTS — SEXUAL HARASSMENT — QUID PRO QUO THEORY — RESIGNATION — RESPONDEAT SUPERIOR.

The elements of a quid pro quo claim of sexual harassment against an employer under the Civil Rights Act are 1) the employee belongs to a protected group, 2) the employee was subject to unwelcome sexual harassment, 3) the harassment was based on sex, 4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions or privileges of employment, and 5) respondeat superior; where an employee involuntarily resigns to escape an employment situation made intolerable because of sexual harassment, the termination of employment is deemed a constructive discharge or firing; the respondeat superior element is met where an employee exercises authority actually delegated to affect the employment status of subordinates even where the act is not within the scope of employment and the employee is acting only for his own benefit.

3. CIVIL RIGHTS — SEXUAL HARASSMENT — QUID PRO QUO THEORY — NOTICE.

An employer is strictly liable for a quid pro quo claim of sexual harassment regardless of the employer's knowledge or notice where the plaintiff shows that she left her employment because the sexual conduct of her supervisor, acting within at least the apparent scope of his authority, either expressly or impliedly affected her employment status or benefits to the extent that unwelcome sexual harassment can be shown to exist.

4. EVIDENCE — APPEAL.

In general, the trial court's decision to admit certain information, testimony, or objects is within its discretion and will not be disturbed on appeal absent a showing of an abuse of discretion.

5. CIVIL RIGHTS — WORKERS' COMPENSATION — EXCLUSIVE REMEDY
    PROVISION.
    A plaintiff in a civil rights action against an employer may
    recover damages for injuries—physical, mental or emotional—
    which were not related to any disability already compensated
    for under the Workers' Disability Compensation Act.

6. APPEAL — ATTORNEY FEES.
    An award of attorney fees will be upheld by the Court of Appeals
    absent an abuse of a trial court's discretion.

*Andrew S. Muthy,* for plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenney,
P.C.* (by *Susan Healy Zitterman*), for Electrolux
Corporation.

Before: HOOD, P.J., and CAVANAGH and J. W.
FITZGERALD,* JJ.

HOOD, P.J. Following a jury trial in Washtenaw
Circuit Court, defendant Electrolux Corporation
was found liable to plaintiff in the amount of
$186,000 for sexual harassment resulting in em-
ployment discrimination in violation of the Civil
Rights Act. Electrolux appeals as of right and
plaintiff has cross-appealed on an issue related to
the amount awarded. We affirm the jury verdict,
but remand for further consideration of the dam-
ages awarded.

Richard Ellis was a supervisor formerly em-
ployed by defendant Electrolux, a subsidiary of
defendant Consolidated Foods. Plaintiff McCalla
had been hired by Ellis to sell vacuum cleaners
door to door. Plaintiff McCalla brought her claim
under the Civil Rights Act based on her allegation
that Ellis had forced her to have sexual inter-
course with him. The incident originating this suit

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment.

occurred nearly ten years ago. Since that time, this suit has developed a lengthy procedural history, including an earlier appeal to this Court, *McCalla v Ellis*, 129 Mich App 452; 341 NW2d 525 (1983), lv den 422 Mich 853 (1985).

Both Ellis and Consolidated had been dismissed as defendants at the time of trial. The jury's award included $32,000 for impaired earning capacity, $54,000 for medical expenses, and $100,000 for noneconomic damages. Thereafter, the trial court deducted $19,000 from the award, the amount plaintiff had received in redemption of a workers' disability compensation claim.

Defendant's first issue is that the trial court should have ordered entry of judgment notwithstanding the verdict or, in the alternative, a new trial. Defendant challenges both the legal basis for plaintiff's claim and the sufficiency of the evidence to support that claim. This issue revisits an issue set forth in our earlier opinion as to whether plaintiff had a legally recognized cause of action. *McCalla, supra*, p 459. The facts as developed at trial have clarified the legal nature of plaintiff's claim and its factual basis. Based on our review of the law and the record, we find both a legal and a factual basis for her claim of sexual harassment.

Initially, we note there is no merit to defendant's argument that this claim was precluded by plaintiff's workers' disability compensation claim. *Boscaglia v Michigan Bell Telephone Co*, 420 Mich 308, 315-316; 362 NW2d 642 (1984). We therefore turn to the heart of defendant's argument—that an act of forcible rape cannot be the basis for a sex discrimination claim.

The Civil Rights Act, like Title VII of the federal Civil Rights Act, prohibits employers from discriminating against a person on the basis of sex with respect to "a term, condition or privilege of em-

ployment." MCL 37.2202; MSA 3.548(202); 42 USC 2000e-2(a)(1). In Michigan, discrimination on the basis of sex has been further defined by statute to include "sexual harassment which means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103(h); MSA 3.548(103)(h). The statute includes such activities when:

> (i) Submission to such conduct or communication is made a term or condition either explicitly or implicitly to obtain employment. . . .
> (ii) Submission to or rejection of such conduct or communication by an individual is used as a factor in decisions affecting such individual's employment. . . .
> (iii) Such conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment. [MCL 37.2103(h)(i),(ii) and (iii); MSA 3.548(103)(h)(i),(ii) and (iii).]

This language parallels that found in the EEOC guidelines regarding sexual harassment and Title VII. See *Coley v Consolidated Rail Corp,* 561 F Supp 645, 646, ns 2-3 (ED Mich, 1982).

In sum, if the sexual conduct is an unwelcome sexual advance or physical conduct of a sexual nature it may be the basis for a sexual harassment claim under the Civil Rights Act. There is nothing in the language of the act which indicates that it was not meant to include unwelcome sexual intercourse.

Defendant has provided us with no authority for its argument that the act does not apply because the sexual conduct was, as characterized by defendant, a crime of violence. The Civil Rights Act is

aimed at remedying those evils caused by sexual discrimination or harassment in the workplace. See *Boscaglia, supra.* That the conduct may be the basis for criminal prosecution or a civil claim against the individual employee does not preclude the possibility that it may also be the basis for a sexual harassment claim.

Assuming that a rape is unwelcome sexual conduct, the burden is then on plaintiff to show a nexus between the conduct and her employment situation. See *Coley, supra,* p 649. In this case plaintiff sought to do so by showing the existence of quid pro quo sexual harassment.

Both the Civil Rights Act and Title VII provide relief for two basic types of sexual harassment: (1) quid pro quo sexual harassment; and (2) sexual harassment which results from a hostile or offensive work environment. See *Langlois v McDonald's Restaurants of Michigan, Inc,* 149 Mich App 309, 312-313; 385 NW2d 778 (1986); *Rabidue v Osceola Refining Co,* 805 F2d 611, 618 (CA 6, 1986). Language in our earlier opinion in this case regarding previous complaints and other allegations of misconduct could be interpreted as anticipating a hostile environment claim. See *McCalla, supra,* p 459. However, plaintiff clearly presented a quid pro quo theory at trial. Defendant agrees that is the relevant theory for our consideration.

The parties have not provided, and we are not aware of, any Michigan authority applying the quid pro quo theory as such. However, in *Langlois,* a hostile environment case, the Court recognized the elements of a quid pro quo claim as set forth by the federal court in *Henson v City of Dundee,* 682 F2d 897 (CA 11, 1982). While this Court is not bound by federal precedent based on Title VII, those precedents analogous to questions presented

under the Civil Rights Act are highly persuasive and will be considered. *Langlois, supra,* p 312.

The five elements of a quid pro quo claim as set forth in *Henson, supra,* p 909 are:

> (1) The employee belongs to a protected group.
>
> (2) The employee was subject to unwelcome sexual harassment.
>
> (3) The harassment complained of was based upon sex.
>
> (4) The employee's reaction to harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. . . .
>
> (5) Respondeat superior. [Emphasis deleted.]

See also *Langlois, supra,* p 313: *Highlander v KFC Nat'l Management Co,* 805 F2d 644, 648 (CA 6, 1986). Defendant argues that elements 4 and 5 are not met in this case because the requisite nexus between the harassment and her employment is missing and because Ellis was not acting as defendant's agent when the sexual conduct occurred.

The fourth element is established where the employee in a supervisory position encourages or demands sexual favors in return for some employment benefit. *Langlois, supra,* p 313. As noted in *Henson, supra,* the harassment may be express or implied. It may be evidenced by a single incident. *Rabidue, supra,* p 621. The classical example of quid pro quo harassment is the situation in which the plaintiff is fired because of a refusal to succumb to sexual demands. *Coley, supra,* p 649. Where an employee involuntarily resigns in order to escape an employment situation made intolerable because of sexual harassment, the termination of employment is considered a constructive discharge or firing. *Henson, supra,* p 907; *Coley, supra,* p 651.

As to the respondeat superior element, defendant argues that it could not be liable because it did not authorize Ellis to rape the plaintiff and because it had no notice of Ellis' sexual proclivity prior to the incident.

The Civil Rights Act defines "employer" to include "an agent." MCL 37.2201(a); MSA 3.548(201)(a). Defendant does not contest that Ellis was an agent at least to the extent that he was in its employ as a supervisor with authority to make employment decisions.

Under the Restatement (Second) of Agency, § 219(2)(d), p 481, an employer may be liable for its employee's actions where the employee "was aided in accomplishing the tort by the existence of the agency relation[ship]." Even if the act is not within the scope of his employment and the employee is acting entirely for his own benefit, the employer may be liable where the employee exercises the authority actually delegated to him by his employer in acting so as to affect the employment status of subordinates. Where it is the employer's delegation of authority that empowered the supervisor to act, the employer can be found liable. *Sparks v Pilot Freight Carriers, Inc,* 830 F2d 1554, 1559 (CA 11, 1987). As noted in *Horn v Duke Homes,* 755 F2d 599, 605 (CA 7, 1985):

> It could be argued that because [the plant superintendent] Haas was not authorized to discriminate on the basis of sex and because his sexual proclivities were wholly unconnected to the wellbeing of the employer, he was acting outside the scope of his employment. On the other hand, by delegating power to Haas the "employer" and Haas essentially merged; as long as the tort complained of was caused by the exercise of this supervisory power, Haas should be deemed as acting within the scope of his employment, and the employer should be held liable for the tort.

As to defendant's claim of lack of notice, if this were a hostile environment claim, employers are not always automatically liable for sexual harassment by their supervisors. *Meritor Savings Bank, FSB v Vinson,* 477 US 57, 72; 106 S Ct 2399; 91 L Ed 2d 49 (1986). However, in the quid pro quo claim, the federal courts have imposed strict liability on the employer even absent proof that higher management knew or should have known of the sexual harassment. *Henson, supra,* p 910; *Sparks, supra,* p 1564, n 22; *Horn, supra,* p 605; *Coley, supra.* The reason for imposing strict liability in a quid pro quo case was set forth in *Henson, supra,* p 910:

> In such a case, the supervisor relies upon his apparent or actual authority to extort sexual consideration from an employee. Therein lies the quid pro quo. In that case the supervisor uses the means furnished to him by the employer to accomplish the prohibited purpose. He acts within the scope of his actual or apparent authority to "hire, fire, discipline or promote." . . . Because the supervisor is acting within at least the apparent scope of the authority entrusted to him by the employer when he makes employment decisions, his conduct can fairly be imputed to the source of his authority. [Citations and footnote omitted.]

Therefore, in this case, plaintiff must show that she left her employment because the sexual conduct of her supervisor, acting within at least the apparent scope of his authority, either expressly or impliedly affected her employment status or benefits to the extent that unwelcome sexual harassment can be shown to exist.

At trial, plaintiff testified that in the early evening of September 1, 1979, a Saturday, she was called at home by Ellis, her supervisor, and asked

to come to the office to sign some contracts. Plaintiff had completed her first week with Electrolux, observing others in the field and attending meetings. She had terminated her prior employment to take the job at Electrolux. Plaintiff understood that the papers were necessary for her to receive a paycheck. She also understood that her pay was based on commissions and that she had not yet made a sale.

A company representative testified that sales commissions were given to new people when they are learning the job in order to provide them with a paycheck during this learning period. Ellis testified that he usually told new hires that they would be getting some money to see them through the first week and that he might have told plaintiff this. On cross-examination, he agreed that when he called plaintiff and offered her the chance to sign the contracts and make some money that he knew she would probably come to the office. He estimated that the contracts involved commissions of $250-$300.

According to plaintiff's testimony, when she arrived at the office, Ellis was alone. As she signed the papers, she felt Ellis breathing down the back of her neck. As she turned to leave, Ellis ordered her to remove her clothes. Plaintiff testified that she was terrified and that after she removed her clothes, Ellis ordered her to have at least four separate acts of oral and vaginal intercourse. Following the episode, Ellis told plaintiff that if she "stuck with him, I'd have no worries."

Ellis testified that he did not force plaintiff to have sex and that he believed that plaintiff had signalled during the prior week that she was sexually available. He denied breathing down her neck and testified that there was only one act of intercourse. He testified that he would have given

plaintiff the commissions in any event because he had told her that he would "pay her so much money the first week anyhow."

Plaintiff testified that she did not return to Electrolux after the assault as a result of the incident.

To a large extent, the finding of sexual harassment depended on credibility determinations that are committed to the jury as the trier of fact. See *Meritor, supra,* p 68. In general, we defer to the trial court's unique opportunity to judge the credibility of the witnesses and will not substitute our judgment for that of the jury unless the record reveals a miscarriage of justice. *Troyanowski v Village of Kent City,* 175 Mich App 217, 223; 437 NW2d 266 (1988).

The parties do not dispute that plaintiff came to the office in response to Ellis' call in order to complete the paperwork necessary for her to receive a paycheck. Contemporaneously with the sexual assault, Ellis told plaintiff that if she stuck with him she would have no problems. Based on the situation, plaintiff could reasonably assume this meant more sexual contact, which would be a factor in decisions affecting or interfering with her employment. Viewing the record in light of the relevant law, we find there was a sufficient factual basis for the jury's verdict.

Our review does not indicate that the court erred in denying defendant's motions for a new trial or for judgment notwithstanding the verdict. *Id.*

Defendant next challenges the trial court's failure to give jury instructions concerning agency, pattern of harassment, the criminal sanction for rape, and the legal basis for plaintiff's claim. It also objects to the giving of an instruction that Electrolux's lack of notice was not a defense. Our

review of the instructions given indicates they are consistent with the law on quid pro quo harassment as discussed above. Possible criminal sanctions were not relevant. Whether rape "could ever be construed as sexual harassment" was a question of law not before the jury. Defendant's challenge of the instructions is without merit. *Niemi v Upper Peninsula Orthopedic Associates, Ltd,* 173 Mich App 326, 328-329; 433 NW2d 363 (1988).

Defendant's third issue is that the trial court erred in admitting the testimony of plaintiff's two experts regarding plaintiff's credibility and whether the sexual encounter was welcome. Defendant does not contest that either witness was an expert; it challenges only the nature of their testimony.

In general, the trial court's decision to admit certain information, testimony, or objects is within its discretion and will not be disturbed on appeal absent a showing of an abuse of discretion. *Estate of Green v St Clair Co Road Comm,* 175 Mich App 478, 485; 438 NW2d 630 (1989).

Defendant specifically objects to an instance when Dr. Theresa Foley testified that in her opinion the sexual activity was not welcomed or solicited by plaintiff. There was no objection to the question or the testimony. It also objects to Foley's response that in her "professional and expert opinion" plaintiff "has not lied or embellished her account of the assault at the Electrolux Company." Defense counsel objected after the response on the basis that it was improper to ask Foley if plaintiff was telling the truth and the trial court agreed.

The second witness whose testimony is challenged is Deborah Weiner, a social worker at an assault crisis center who interviewed plaintiff on the Tuesday following the incident. Over defense counsel's objection that Weiner's testimony was

improper vouching as to plaintiff's credibility, Weiner was allowed to give her opinion based on her professional training and experience that the sexual contact with Ellis was not a welcome sexual advance. Plaintiff's argument was that the testimony was admissible as an expert witness' opinion on an ultimate issue under MRE 702 and 704. The court allowed the testimony on the basis that it did not go to credibility of the complainant but was Weiner's belief as to what had taken place. On cross-examination, Weiner clarified that she had not been present during the sexual contact and that her testimony was based on what plaintiff had reported. Weiner testified that she thought she was being asked whether all the forced sexual contacts could logically have been consensual.

The credibility of a witness is a matter within the province of the jury. *Johnson v Corbet,* 423 Mich 304, 314; 377 NW2d 713 (1985). In criminal sexual conduct cases, expert testimony on credibility is not allowed so as to avoid giving a stamp of scientific legitimacy to an opinion on the truth or falsity of the testimony in question. See *People v Graham,* 173 Mich App 473, 478; 434 NW2d 165 (1988); *People v Matlock,* 153 Mich App 171, 179; 395 NW2d 274 (1986). While an expert may not testify concerning veracity or credibility, a witness may testify concerning characteristics normally found in sexually abused children and we would assume, where appropriate, in a sexually abused adult. *People v Reinhardt,* 167 Mich App 584, 596-597; 423 NW2d 275 (1988). Both lay and expert witnesses may give opinion testimony, including an opinion on an ultimate issue to be decided by the trier of fact. MRE 701, 702, 704; *Heath v Alma Plastics Co,* 121 Mich App 137, 142-143; 328 NW2d 598 (1982).

Both witnesses had certain expertise or experi-

ences they could draw upon in giving an opinion. While Foley's testimony that the sexual act was not welcome could arguably be linked to whatever profile she was able to do on the plaintiff, we agree with the trial court that her testimony as to plaintiff's not lying or embellishing was not proper. Although Weiner is characterized as an expert witness on appeal and plaintiff's counsel relied on the expert witness court rules at trial, the record does not indicate that she was ever offered or qualified as an expert. However, given her years of experience at the center and her direct involvement with plaintiff, it appears that an opinion would have been admissible under MRE 701 and 704. In any event, based on this record, there is nothing indicating a basis for an opinion, whether as an expert or a lay person, that the sexual activity was welcome.

Our review of the entire circumstances of this case, however, does not indicate prejudicial error requiring reversal. *Ilins v Burns,* 388 Mich 504, 510; 201 NW2d 624 (1972). This was a claim under the Civil Rights Act. Even if there was unwelcome sexual conduct, the ultimate issue was whether it amounted to sexual harassment and employment discrimination. Defendant's theory, as set out in counsel's closing argument, was that even if the sexual intercourse had occurred that was not enough to establish its liability under the Civil Rights Act.

The jury was aware from counsel's arguments and the court's decisions that the witnesses were not experts in credibility. Foley's credentials and her reliability were thoroughly explained on cross-examination. Even when the court agreed with defense counsel that Foley's credibility testimony was not proper, defense counsel did not ask for a curative instruction, thereby at least implying that

he was satisfied with the court's decision and that no further action was needed.

Given the nature of the claim and our review of the entire circumstances of the trial, reversal is not required. *Ilins, supra.*

Defendant also challenges the admission of rebuttal testimony by a former employee regarding Ellis as irrelevant and prejudicial. Plaintiff claims the evidence was relevant to attack Ellis' credibility and his statement that he had never made a pass at a female employee.

The witness had been called earlier in the trial. Defense counsel objected to her testimony because there was no foundation as to when she had encountered Ellis. The court then heard the testimony outside the presence of the jury and agreed that it was not admissible at that point in the trial. Although counsel was therefore aware of the substance of the testimony, no objection was made prior to its introduction on rebuttal. The testimony was basically that the witness had been uneasy in Ellis' presence, suspecting a possible sexual advance. It was of little value or relevance to this case. However, given defendant's failure to make a timely objection and the absence of any showing that the testimony affected a substantial right of defendant, we find no error requiring reversal. MCR 2.613(A); *Davis v Detroit,* 149 Mich App 249, 266; 386 NW2d 169 (1986).

Both parties raise valid issues regarding damages and the fact that plaintiff had already received an award of $19,000 under a redemption agreement for her workers' disability compensation claim. When this issue was raised before trial, the trial court's solution was to indicate it would deduct the $19,000 from any jury award for economic damages.

It is clear under *Boscaglia* that plaintiff could

bring this action as well as a claim for workers' compensation. However, that Court specifically declined to address what injuries were compensable under the Civil Rights Act. *Boscaglia, supra,* p 316. Following *Boscaglia,* this Court in *Slayton v Michigan Host, Inc,* 144 Mich App 535, 559; 376 NW2d 664 (1985), held that the plaintiff in a civil rights claim is entitled to seek recovery for those damages—physical, mental or emotional—which she can prove were unrelated to the disability already compensated for by the redemption agreement. The deduction of the redemption sum from the total economic award does not accomplish this result. Because of the manner in which this issue was resolved below, a record was not developed which indicates what claims were settled by the redemption agreement or how plaintiff's present claims are the same or unrelated. Therefore, on this issue alone, we remand to the trial court to allow plaintiff the opportunity to clarify the record and show whether the claim for economic damages should stand.

The final issue involves the court's award of costs and attorney fees. Plaintiff's counsel was awarded $43,100 in attorney fees and $9,520.09 in costs. The attorney fees were awarded in part under the Civil Rights Act, MCL 37.2802; MSA 3.548(802), and in part under MCR 2.403(O) for fees incurred after defendant's rejection of a mediation award. The heart of defendant's argument appears to be that the bills were not sufficiently detailed. There were two hearings on this issue. Defendant had the opportunity to raise specific problems. The trial court is not required to detail its findings underlying the award. Our review does not indicate that the award was an abuse of discretion. *Wood v DAIIE,* 413 Mich 573, 588; 321 NW2d 653 (1982); *Collister v Sunshine Food Stores, Inc,*

166 Mich App 272; 419 NW2d 781 (1988); *Bien v Venticinque,* 151 Mich App 229; 390 NW2d 702 (1986). We note that upon remand the trial court may choose to adjust the attorney fees if there is a decrease in the total judgment.

With the exception of the damages issue which is remanded for further proceedings, the jury's verdict is affirmed. This Court does not retain jurisdiction.