CHAMPION v NATIONWIDE SECURITY, INC

Docket No. 149365. Submitted February 2, 1994, at Detroit. Decided
    May 16, 1994, at 9:15 A.M. Leave to appeal sought.

Cheryl Champion brought an action in the Wayne Circuit Court
    against Nationwide Security, Inc., and Eddie L. Fountain,
    alleging that she was sexually harassed in violation of the Civil
    Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, while
    employed at Nationwide under the supervision of Fountain,
    who molested and raped her. The court, Richard P. Hathaway,
    J., granted summary disposition for Nationwide, ruling that
    Nationwide could not be held liable under the doctrine of
    respondeat superior because Fountain lacked plenary authority
    over hiring, firing, promoting, or disciplining employees and
    therefore was not Nationwide's agent. Champion appealed.

The Court of Appeals *held:*

1. For purposes of the Civil Rights Act, an individual is an
    agent of an employer if the individual serves in a supervisory
    position and exercises significant control over an employee's
    firing, hiring, or conditions of employment. The trial court
    erred in that it granted summary disposition for Nationwide on
    the wrong basis. The court employed the wrong test for deter-
    mining whether Fountain had been Nationwide's agent. Under
    the right test, a question of fact existed whether Fountain had
    exercised significant control so as to be deemed Nationwide's
    agent.

2. Nevertheless, Nationwide is entitled to summary disposi-
    tion because Champion failed to establish discrimination be-
    cause of sex under MCL 37.2103(i)(ii); MSA 3.548(103)(i)(ii),
    which defines such discrimination to include sexual harassment
    in the form of unwelcome sexual advances, requests for sexual
    favors, and other verbal or physical conduct or communication
    of a sexual nature when submission to or rejection of such
    conduct or communication by an individual is used as a factor
    in decisions affecting such individual's employment. Champion

REFERENCES

Am Jur 2d, Job Discrimination §§ 40, 56, 63, 952, 953, 975.
On-the-job sexual harassment as violation of state civil rights law.
    18 ALR4th 328.

did not establish that her submission to or rejection of sexual harassment by Fountain was used as a factor in a decision by Nationwide or Fountain that affected her employment.

Affirmed.

1. Civil Rights — Civil Rights Act — Employers — Supervisors.

An individual may be considered an agent of an employer under the Civil Rights Act if the individual serves in a supervisory position and exercises significant control over an employee's firing, hiring, or conditions of employment (MCL 37.2201[a]; MSA 3.548[201][a]).

2. Civil Rights — Civil Rights Act — Employment Discrimination — Sexual Harassment.

An employer or its agent who makes submission to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature a term or condition of an employee's continued employment does not violate the provision of the Civil Rights Act that forbids such harassment until the employer, or its agent, makes a decision based in part on the employee's response to the improper conduct or communication (MCL 37.2103[i][ii]; MSA 3.548[103][i][ii]).

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Michelle J. Harrrison*), for Cheryl Champion.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for Nationwide Security, Inc.

Before: Wahls, P.J., and Reilly and R. M. Daniels,* JJ.

Reilly, J. Plaintiff appeals as of right a circuit court order granting defendant Nationwide Security, Inc.'s motion for summary disposition of plaintiff's sexual harassment claim.[1] We affirm.

Plaintiff's claim was brought pursuant to the Civil Rights Act, MCL 37.2101 *et seq.*; MSA

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The order also dismissed the sexual harassment claim against defendant Fountain and the negligence claim against Nationwide. Plaintiff does not appeal these rulings.

3.548(101) *et seq.*; § 202(1)(a) of which prohibits an employer from discriminating against a person because of sex "with respect to employment, compensation, or a term, condition, or privilege of employment." MCL 37.2202(1)(a); MSA 3.548(202) (1)(a). In this case, plaintiff, an employee of Nationwide, alleged that her supervisor, defendant Eddie L. Fountain, sexually harassed her, culminating in a rape. Plaintiff sought to impose liability on Nationwide on the basis of respondeat superior.

Plaintiff argues that a question of fact existed with respect to whether Fountain's authority over plaintiff was sufficient to impose liability on Nationwide. We agree.

The trial court apparently granted Nationwide's motion for summary disposition on the basis of Fountain's lack of plenary authority over hiring, firing, promoting, or disciplining. The Civil Rights Act prohibits discriminatory conduct by employers and their agents. MCL 37.2201(a); MSA 3.548(201) (a). Nationwide's vicarious liability requires that Fountain be liable under the act as "an agent." In its brief in support of the motion for summary disposition, Nationwide argued that an "agent" under the act was a person who had responsibility for making personnel decisions. Asserting that Fountain lacked the requisite authority to be considered an agent under the act, Nationwide argued that it was entitled to judgment as a matter of law. The court's statements at the hearing on the motion suggest that the court was persuaded by this argument.

In deciding this issue, we have found little guidance in the published decisions of the courts of this state. In *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 799-800; 369 NW2d 223 (1985), this Court held that a person who has responsibility for making person-

nel decisions for the company is an agent within the statutory definition of an employer. However, that decision does not indicate that supervisors without such authority are not agents. In *McCalla v Ellis,* 180 Mich App 372; 446 NW2d 904 (1989), the employer did not contest that the supervisor was "an agent at least to the extent that he was in its employ as a supervisor with authority to make employment decisions." The parties have not provided, and we are not aware of, any other Michigan case in which the requisite authority to be an agent under the act has been directly raised and addressed. Therefore, recognizing that we are not compelled to follow federal precedent interpreting title VII of the United States Civil Rights Act, 42 USC 2000e(b), which is analogous to § 201(a) at issue here, we nonetheless turn to the decisions of the federal courts for guidance. *Radtke v Everett,* 442 Mich 368, 381-382; 501 NW2d 155 (1993).

In *Kauffman v Allied Signal, Inc,* 970 F2d 178, 186 (CA 6, 1992), the court rejected the argument that a supervisor must have complete authority over hiring, firing, promoting, or disciplining to be considered an agent under the act. In that case, the plaintiff alleged that she was sexually harassed by her supervisor. The district court granted the employer's motion for summary judgment in part because the supervisor did not have the authority to hire, fire, promote, or discipline the plaintiff on his own. *Id.* at 181-182. In regard to the plaintiff's quid pro quo sexual harassment claim, the Sixth Circuit Court of Appeals disagreed:

> [Plaintiff-Appellant] argues that an individual qualifies as an employer under Title VII if he or she serves in a supervisory position and exercises significant control over the employee's firing, hiring, or conditions of employment.

Appellant is correct in her statement that nowhere is it required that an employee must exercise complete control of plenary duties to qualify as an agent of the employer. Rather, all that is required is that the employee have "significant control" of those duties. [*Id.* at 186. Citations omitted.]

In this case, the record indicates that Fountain may have possessed sufficient authority over plaintiff to be an "agent" under the act. The Account Supervisor's Training Manual indicates that, as an account supervisor, Fountain was responsible for administering initial discipline and, on his recommendation, security officers like plaintiff may be suspended, transferred, or terminated. The account supervisor completes the officers' performance evaluations, which "help in determining if and when an officer is prepared for promotion and/or possible reassignment to more critical and prestigious assignments." According to the training manual, the account supervisor "plays a major role in monitoring personnel and in making recommendations in reference to officers that may be suitable for advancement," and the account supervisor's recommendation is "the cornerstone of an officer's advancement." This record indicates that there was a genuine issue of material fact with regard to whether Fountain had significant control over plaintiff's employment conditions.

In summary, we conclude that the trial court erred in granting summary disposition to Nationwide on this issue. A question of fact existed regarding whether Fountain was given the necessary authority to be Nationwide's agent, thus subjecting Nationwide to liability under the theory of respondeat superior.

In its motion for summary disposition, Nationwide also argued that plaintiff had not alleged and

could not show that submission to or rejection of Fountain's conduct was used as a basis for employment decisions affecting plaintiff. The trial court seemed to address this argument when it stated "as far as this Court is concerned, when one commits a rape upon another person, that is not a case of quid pro quo. That is, for all intents and purposes, is [sic] a rape." Although the trial court's decision to grant summary disposition to plaintiff does not appear to have been based on this issue, this Court will review issues that were not decided by the trial court if the question is one of law and all the facts necessary for its resolution have been presented. *American Nat'l Fire Ins Co v Frankenmuth Mutual Ins Co,* 199 Mich App 202, 210; 501 NW2d 237 (1993).

According to plaintiff, the harassment began with Fountain's flirtatious behavior days before the rape. Then, in a conversation hours before the attack, Fountain said he knew plaintiff had just had a baby, that he was attracted to her, and that he knew she was "ready now." He stated that he was going to go home with her because he wanted to know if she had a boyfriend. She told him directly that under no circumstances was he going home with her. According to plaintiff, "And he said that as long as I worked for him that I would have nothing to worry about and that this was between me and him and that he would take care of me and that I would never have to worry about my job." Later that evening, Fountain took plaintiff on security rounds of an unoccupied building, led her into a room, and raped her. Plaintiff did not return to work for Nationwide after the incident. On the basis of her report of the assault, Fountain was suspended.

In enacting the Civil Rights Act, the Legislature

provided specific standards for determining when sexual harassment is discrimination based on sex.

> Discrimination because of sex includes sexual harassment which means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature when:
>
> *   *   *
>
> (*i*) Submission to such conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .
>
> (*ii*) Submission to or rejection of such conduct or communication by an individual is used as a factor in decisions affecting such individual's employment . . . .
>
> (*iii*) Such conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment. [MCL 37.2103(i); MSA 3.548(103)(i).]

The conduct defined in the first two subsections is usually referred to as quid pro quo sexual harassment, while the third subsection is referred to as hostile work environment. *Radtke,* at 381, n 16.

Plaintiff has relied on a quid pro quo theory of liability apparently based on subsection (*ii*). Plaintiff has not argued or presented the facts necessary for a hostile work environment claim against Nationwide.[2] Furthermore, Fountain's conduct does not fit within subsection (*i*) because there is no

---

[2] According to the Supreme Court's opinion in *Radtke,* on rare occasions, a single incident may create a hostile work environment. *Id.* at 395. However, an employer may avoid liability for a hostile work environment claim if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment. This is true even if a supervisor is accused of the harassment. *Id.* at 396. In this case, the undisputed facts indicate that Fountain was immediately suspended following plaintiff's report of the assault.

indication that the harassment was related to plaintiff's obtaining employment. Therefore, our analysis is focused on whether the facts support a claim based on the Legislature's definition of sexual harassment in subsection (*ii*). We conclude that they do not.

By its terms, subsection (*ii*) requires that a decision be made affecting the employee's employment, and that the employee's response be "used" as a factor in the decision-making process. In this case, plaintiff has not shown that either Fountain or Nationwide used her submission to or rejection of Fountain's conduct or communication as a factor in a decision affecting plaintiff's employment. At most, Fountain indicated that plaintiff's employment would be used or would be affected by her response to his advances. However, under the definition provided by the Legislature, until the employer, or its agent, makes a decision based in part on an employee's response to improper conduct or communication, the conduct does not fall within subsection (*ii*). The promise or threat to make employment decisions based on the response may create a hostile employment environment under subsection (*iii*), but it is not included in the Legislature's definition of harassment under subsection (*ii*).

We agree with plaintiff that this case is analogous to *McCalla, supra.* However, we believe that case was wrongly decided. In *McCalla,* the plaintiff alleged that she was raped by her supervisor. This Court determined that there was sufficient evidence to uphold the jury's verdict against the employer because "[b]ased on the situation, plaintiff could reasonably assume this meant more sexual contact, which would be a factor in decisions affecting or interfering with her employment."

The decision in *McCalla* was based on the ele-

ments of a quid pro quo claim derived from the federal guidelines, which differ from the Michigan Civil Rights Act. *McCalla* adopted the elements as stated by the Eleventh Circuit Court of Appeals, which in turn was guided by the Equal Employment Opportunity Commission (EEOC) guidelines on sexual harassment in effect in 1981, 29 CFR 1604.11. *Id.* at 376-378; *Henson v City of Dundee,* 682 F2d 897, 909 (CA 11, 1982). The language of the Civil Rights Act closely parallels the language of the EEOC guidelines. *Radtke* at 381. However, in one respect, the Legislature's definition of sexual harassment is much more restrictive than the EEOC guidelines.

Implicit or explicit promises or threats to consider an employee's response to improper conduct may satisfy the standards of the EEOC guidelines, but do not come within the Legislature's definition of sexual harassment that constitutes discrimination because of sex. Under the guidelines, sexual harassment occurs when submission to the improper conduct is "made either explicitly or implicitly a term or condition of an individual's employment . . . ." 29 CFR 1604.11(a). However, the parallel provision in the Civil Rights Act, subsection (*i*), is limited to when submission "is made a term or condition to *obtain* employment . . . ." MCL 37.2103(i)(*i*); MSA 3.548(103)(i)(*i*). Accordingly, when an employer, including an agent, explicitly or implicitly (such as by making promises or threats) makes submission to improper conduct a term or condition of employment after the employment has commenced, the conduct falls within the federal guidelines, but outside the definition in the Michigan Civil Rights Act.

Plaintiff's allegation that she was constructively discharged does not change the analysis. We agree with *McCalla* that in certain circumstances an

employee's resignation to escape discrimination may be deemed a constructive discharge. See *id.* at 378; *Jenkins, supra.* However, a constructive discharge cannot be considered a decision in which submission to or rejection of the improper conduct or communication is used as a factor. MCL 37.2102(i)(*ii*); MSA 3.548(102)(i)(*ii*). The only reasonable interpretation of subsection (*ii*) requires a decision by the employer or an agent, not the employee.

Therefore, we conclude that plaintiff has not demonstrated a genuine issue of material fact and that Nationwide was entitled to judgment as a matter of law. Where the trial court reached the right result for the wrong reason, this Court will not reverse. *Bonner v Chicago Title Ins Co,* 194 Mich App 462, 472; 487 NW2d 807 (1992).

Affirmed.