**Indianna ODIGBO, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC. and William Short, Defendants.**

**No. Civ. 97–40157.**

United States District Court, E.D. Michigan, Southern Division.

May 29, 1998.

James M. Brady, Ravid Assoc., Southfield, MI, for Plaintiff.

George D. Mesritz, Miller, Canfield, Jefferson, Detroit, MI, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff Indianna Odigbo commenced this action in April, 1997 after defendant North-

west Airlines, Inc. ("Northwest") terminated his employment. Presently before this court is a motion by defendant Northwest for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, defendant's motion will be granted.

### FACTS

Construing the facts in a light most favorable to the plaintiff, they are as follows. On March 8, 1995, at approximately 7:15 a.m., plaintiff, a black male from Nigeria who was then working as an "equipment service employee" for defendant Northwest, was exiting a breakroom located at Concourse D of Detroit Metropolitan Airport when he encountered William Short, an "equipment service chief" for Northwest. Short grabbed plaintiff's shirt and told plaintiff that he had been looking for him. After accusing plaintiff of sleeping on the job, Short told plaintiff that he was going to take plaintiff back to where he came from, meaning Africa. He also told plaintiff, "we don't need your kinds here."

Short subsequently reported to Ken Gray, Manager of Customer Service for Northwest, that he had discovered plaintiff sleeping or giving the appearance of sleeping on the job. Gray conducted an investigation into the matter. Gray interviewed plaintiff and Short separately.[1] At no time was Gray made aware of the alleged racial comments Short made to plaintiff on March 8, 1995.

After his investigation into Short's complaint, Gray decided to terminate plaintiff's employment with Northwest. Gray informed plaintiff of this decision via a letter dated March 21, 1995 which read as follows:

On March 8, 1995, you were assigned to work at Building 514. Although you started work at 5:30 am, you were absent from your work area from 5:30 am until approximately 7:50 am, when your supervisor [Short] discovered you sleeping, or giving the appearance of sleeping, in a breakroom on D Concourse. Your actions are in violation of Rule #1, and Rule #23. Sec-

tions a, b, and e of the Rules of Conduct for Employees of Northest [sic] Airlines. When you were discovered by your supervisor [Short], you were instructed by him to report to Building 514 after completion of your next flight. You failed to report to your assigned area (Building 514) as instructed. Your actions are in violation of Rule #1 and Rule #11 of the Rules of Conduct for Employees of Northwest Airlines.

During a company investigation on March 10, 1995, you were not honest and truthful with your answers regarding the fact that you were sleeping on the job, resulting in your failure to cooperate fully with the Company. Your actions are in violation of Rule #1, Rule #9 and Rule #10 of the Rules of Conduct for Employees of Northwest Airlines.

Each of the above charges, standing alone, justifies your immediate discharge. Therefore, your employment with Northwest Airlines is terminated effective March 22, 1995.

### Procedural History

On or about April 10, 1997, plaintiff instituted this action against Northwest in the County of Wayne, State of Michigan alleging that his discharge from Northwest was discriminatory. Plaintiff seeks damages pursuant to the Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2201 (Count I) and also under a theory of intentional infliction of emotional distress (Count II). On or about May 13, 1997, Northwest removed the action to this court.

On July 17, 1997, Northwest filed a motion to dismiss. In that motion Northwest argued that plaintiff's claims were preempted by the Airline Deregulation Act, 49 U.S.C. § 1305(a)(1). This court rejected Northwest's pre-emption argument and denied Northwest's motion to dismiss in an opinion and order dated November 26, 1997.

Now Northwest is before this court seeking summary judgment on plaintiff's two

---

1. Also present at these interviews were representatives from the International Association of Machinists and Aerospace Workers, the union of which plaintiff and Short were members. Spe-

cifically, Don Staples was present during Gray's interview of plaintiff and Larry Scott was present during Gray's interview of Short.

claims. Northwest contends that plaintiff's claim of racial and/or national origin discrimination under the Elliott–Larsen Civil Rights Act fails as a matter of law because there is no evidence that plaintiff was terminated for unlawful reasons. Northwest further argues that summary judgment should be granted to it on plaintiff's claim of intentional infliction of emotional distress because plaintiff cannot meet his burden of showing that Northwest's decision to terminate him was "extreme and outrageous" or "utterly intolerable" under the circumstances.

## *ANALYSIS*

### *SUMMARY JUDGMENT STANDARD*

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir .1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n., Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.1993), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton,* 24 F.3d 823, 826–27 (6th Cir.1994).

### *ELLIOTT–LARSEN ACT CLAIM*

Northwest moves for summary judgment on Count I, a claim under Section 202 of the Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2202. This Section bars "employers" from engaging in discriminatory conduct. Section 202 provides:

An *employer* shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

M.C.L.A. § 37.2202 (emphasis added).

The term "employer" is defined at Section 201 as "a person who has 1 or more employees, *and includes an agent of that person.*"

M.C.L.A. § 37.2201 (emphasis added). By defining "employer" to include "agents" of the employer, the Michigan Legislature clearly intended for corporate entities, which cannot physically commit discriminatory acts themselves, to be liable when their "agents" engage in discriminatory conduct proscribed by Section 202.[2]

One of the critical issues the instant case presents is whether any "agent" of Northwest engaged in discriminatory conduct prohibited by Section 202 such that Northwest can be liable for the same. This issue is a thorny one and is made difficult by the lack of a statutory definition of the word "agent." Indeed, the matter is further complicated by the fact that the Michigan Supreme Court has yet to place any judicial gloss on the meaning of the term "agent." Since neither the statute nor Michigan's highest court have defined the term "agent," this court will look to Michigan Court of Appeals decisions for assistance in deriving a definition for that term.

In two cases, the Michigan Court of Appeals has attempted to clarify the meaning of the term "agent" as that term appears in the Elliott–Larsen Civil Rights Act. First, in *Jenkins v. Southeastern Michigan Chapter, American Red Cross*, 141 Mich.App. 785, 369 N.W.2d 223 (1985), the Michigan Court of Appeals held that an individual responsible for making personnel decisions affecting the plaintiff is an "agent" within the Elliott–Larsen Civil Rights Act's definition of an "employer." *Id.* at 799–800, 369 N.W.2d 223. Second, in *Champion v. Nationwide Security, Inc.*, 205 Mich.App. 263, 517 N.W.2d 777 (1994), the Michigan Court of Appeals elaborated on the *Jenkins* definition of "agent." In *Champion*, the court stated that any per-

son who exercises significant control over a plaintiff's firing, hiring, or conditions of employment is an "agent" under the statute. *Id.* at 266–27, 517 N.W.2d 777.

In interpreting the word "agent," the Michigan Court of Appeals in *Jenkins* and *Champion* relied on federal cases interpreting that same term as it is used in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[3] Specifically, in *Jenkins*, the Michigan Court of Appeals relied on *Munford v. James T. Barnes & Co.*, 441 F.Supp. 459 (E.D.Mich.1977), in which it was held that a person is an "agent" under Title VII if he or she has responsibility for making personnel decisions for the company. The Michigan Court of Appeals in *Jenkins* found that same standard applicable to Elliott–Larsen Civil Rights Act cases. In *Champion*, the Michigan Court of Appeals construed the term "agent" under the Elliott–Larsen Civil Rights Act in precisely the same manner in which the Sixth Circuit construed that term in *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 186 (6th Cir.1992), a Title VII case. In particular, the court in *Champion* found, as did the court in *Kauffman*, that a person is an "agent" if he or she has "significant control" over a plaintiff's hiring, firing, or conditions of employment.

This court will follow the definition of "agent" articulated in *Jenkins* and expanded upon in *Champion*. Accordingly, this court finds that the term "agent" as used in the Elliott–Larsen Civil Rights Act is someone in a supervisory capacity who exercises significant control over the plaintiff's hiring, firing, or conditions of employment. *See also Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir.1994) (an "agent" un-

---

**2.** By limiting an employer's liability to acts committed by its "agents," the Michigan Legislature must have intended to place some limits on the acts of employees for which employers could be held liable. *See Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that in defining "employer" in Title VII to include "any agent" of the employer, Congress must have intended to place some limits on the acts of employees for which employers could be held liable under Title VII).

**3.** It is well-established that federal decisions interpreting Title VII are highly persuasive in re-

solving analogous Elliott–Larsen Civil Rights Act issues. *See e.g., Moll v. Parkside Livonia Credit Union*, 525 F.Supp. 786, 789 (E.D.Mich.1981) (holding that it is appropriate to consider Title VII law as a guide in interpreting the Elliott–Larsen Civil Rights Act) and *Langlois v. McDonald's Restaurants of Mich., Inc.*, 149 Mich. App. 309, 312, 385 N.W.2d 778 (1986) ("Michigan courts regard federal precedents on questions analogous to those presented under Michigan's civil rights statutes as highly persuasive, although not binding.").

der Title VII is someone who "serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment"); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir. 1993) (an employer is liable for actions by an individual who is a supervisor and significantly controls plaintiff's hiring, firing, or employment conditions); *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), *aff'd. in pertinent part,* 900 F.2d 27 (4th Cir.1990) (en banc) (an individual is an "employer" under Title VII is he or she has "significant input into ... personnel decisions"); *Williams v. City of Montgomery,* 742 F.2d 586, 589 (11th Cir.1984) (employer can be held liable for acts of persons to whom the employer has delegated control of some of the traditional employer rights); *Flowers v. Crouch–Walker Corp.,* 552 F.2d 1277, 1282 (7th Cir.1977) (employer liable for any Title VII violation by plaintiff's supervisor). *See also Freeman v. Unisys Corp.,* 870 F.Supp. 169, 173 (1994) (holding that "merely informational input by an employee or supervisor does not make them an agent of an employer that qualifies them for liability under" the Elliott–Larsen Civil Rights Act). Employers should only be held liable for discriminatory acts committed by persons to whom the employer has delegated employer-like functions. Such delegatees are alter egos of the employer and the employer must accept responsibility for their actions. S.A. Greene, *Reevaluation of Title VII Abusive Environment Claims Based on Sexual Harassment After Meritor Savings Bank v. Vinson,* 13 T. Marshall L.Rev. 29, 32 (1988). *See also Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417, 1422 (7th Cir.1986). In fact, in cases involving corporations, "saying that the 'corporation' has committed some wrong ... simply means that *someone at the decision-making level in the corporate hierarchy* has committed the wrong," and the employer should only be liable for such person's deliberate acts. *Id.* (emphasis added). *See also Shager v. Upjohn Co.,* 913 F.2d 398, 399–400 (7th Cir.1990) (defendant liable for age-biased acts of District Manager, John Lehnst, who had significant authority over employees, including the authority to hire and evaluate the performance of subordinates).

█ Having defined "agent," the question is thus whether there is any genuine issue of material fact as to whether an "agent" of Northwest acted discriminatorily here. Plaintiff claims that an "agent" of Northwest did act discriminatorily, and specifically, William Short. Northwest insists that Short is not an "agent" and that Northwest therefore cannot be held liable for his alleged discriminatory acts.

The evaluation of Short's possible agency status must be conducted in the context of the alleged discriminatory act, to wit: the decision to terminate plaintiff. *See e.g., Levendos v. Stern Entertainment Inc.,* 909 F.2d 747, 752 (3rd Cir.1990) (person is an "agent" if he or she participates in the decision-making process that forms the basis of the discrimination) and *Hamilton v. Rodgers,* 791 F.2d 439, 443 (5th Cir.1986) (individuals who participate in the decision-making process that forms the basis of the discrimination are "agents" and thus "employers" under Title VII). If Short is an "agent" of Northwest for such an action, meaning that Short had "significant input" into the decision to terminate plaintiff, Northwest can possibly be held liable for racial and/or national origin discrimination in this case.

This court finds that Short is not an "agent" of Northwest in this case. During the relevant time period, Short held the position of "equipment service chief." His role vis-a-vis the plaintiff, an equipment service employee, was defined in the following manner by the collective bargaining agreement ("CBA") between Northwest and the union of which both Short and plaintiff were members:[4]

An equipment service chief shall be an employee charged with the responsibility of assigning, leading and directing the work of equipment service employees or cleaners and performing such equipment service work as may be required. The

---

4. Plaintiff and Short were members of the International Association of Machinists and Aerospace Workers.

term "leading" includes planning, organizing and controlling operations delegated to him. Equipment service chiefs will be selected in accordance with the seniority provisions of this Agreement with due consideration for ability to handle employees and assume responsibility. Equipment service chiefs will not perform mechanics work of any class or supervise mechanics in their work. No equipment service chief will be required to lead and direct the work of a group totalling more than 12 equipment service employees and cleaners. At all locations or stations where it is necessary to maintain more than three equipment service employees working on a shift or for the preponderance of hours of the eight hour shift, one will be an equipment service chief.

\*\*\*

While Chiefs covered by this Agreement are expected to direct and lead their crew members for both job performance enhancement and problem solving as part of their normal leadership responsibilities, they will not be required or allowed to issue formal discipline (i.e., Level One and Two Reminders, DML Day or Discharge) to other employees.

The CBA clearly does not give Short, a union employee who is not part of Northwest management, the authority to make or even participate in personnel decisions affecting other union employees, such as plaintiff. Moreover, according to Gray's affidavit, which is uncontroverted, Short had no direct involvement in the decision to discharge plaintiff. For these reasons, this court finds that Short is not an agent of Northwest for the decision which forms the basis of the discrimination here. Indeed, plaintiff has not cited a single case in which such limited duties of an employee in a discriminatory discharge case were sufficient to create a genuine issue of material fact as to that employee's agency status.[5]

■ If anyone was an agent of Northwest in this case, it was Ken Gray. As stated *supra*, Gray, alone, made the decision to

terminate plaintiff. Yet, there can be no liability on the part of Northwest for Gray's decision to terminate plaintiff because there is no evidence showing that Gray made his decision for unlawful reasons. For instance, there is no evidence showing that Gray harbored any discriminatory views toward plaintiff. Moreover, there is no evidence showing Gray was aware of the allegedly discriminatory statements made by Short and ratified Short's discriminatory conduct. Plaintiff surely had ample opportunity to make Gray aware of the statements by Short because Gray not only asked plaintiff to transcribe his version of the events which occurred on March 8, 1995, but Gray also questioned plaintiff about the March 8, 1995 incident. Plaintiff did not make known to Gray during either of these two instances, Short's allegedly discriminatory statements.

In sum, this court finds that not imputing liability to Northwest in this instance is consistent with racial and/or sexual hostile work environment cases. In such cases, an employer is only liable for the harassing actions of a non-supervisor if a supervisor knew or should have known of the harassing conduct and did not take prompt and remedial action. *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 803 (6th Cir.1994). Applying the same standard to this case, Northwest should not be held liable for discriminatory statements made by Short since Gray, the person who single-handedly made the decision to terminate plaintiff, did not know of Short's alleged racial biases nor should he have known of them.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Northwest moves for summary judgment on Count II, a claim for intentional infliction of emotional distress. This tort is not yet recognized by the Michigan Supreme Court. To the extent this tort is recognized by the Michigan Court of Appeals, the following standard has been adopted consistent with Section 46 of the Restatement (Second) Torts:

---

**5.** By comparison, if the discrimination of which plaintiff complained was discrimination in work assignments, perhaps this court would find Short to be an "agent" of Northwest *for that purpose*. The CBA unambiguously cloaks Short with authority over plaintiff's job assignments.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

*Ledsinger v. Burmeister,* 114 Mich.App. 12, 17–18, 318 N.W.2d 558 (1982) With respect to the requirement that the defendant's conduct be "extreme and outrageous", the Restatement, § 46, cmt. d, p. 73, states:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 18, 318 N.W.2d 558.

This court finds that no reasonable juror could find Northwest's conduct "extreme and outrageous" as a matter of law. Summary judgment must therefore be granted Northwest on plaintiff Is claim of intentional infliction of emotional distress. The facts simply stated are as follows. Gray received a complaint by Short accusing plaintiff of sleeping on the job and thereafter conducted an investigation into the matter. During the investigation, Gray gave plaintiff an adequate opportunity to reveal his version of the facts, and specifically provided plaintiff the chance to make known to Gray Short's allegedly discriminatory remarks, but at no time did plaintiff do so. Northwest management ultimately determined that Short's complaint was true and that it provided sufficient grounds for plaintiff's discharge.

■ There may be a genuine issue of material fact as to whether Short's conduct is "extreme and outrageous." Plaintiff alleges that Short, for racial reasons, fabricated a complaint about plaintiff sleeping on the job—a complaint which ultimately led to plaintiff's discharge. Yet, Northwest is not liable for such conduct by Short. Under Section 219 of the Restatement (Second) of Agency:

(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or consequences, or

(b) the master was negligent or reckless, or

(c) the conduct violated a non-delegable duty of the master, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

In the case *sub judice,* not one of the bases for imposing liability on Northwest is present. Section 219(1) is inapplicable because Short was not acting within the scope of his employment when he allegedly discriminated against plaintiff. Indeed, Northwest had a policy against discrimination by its employees, which has been introduced as an exhibit herein. Likewise, Section 219(2)(a) does not apply since there is no evidence that Northwest intended for Short to discriminate against plaintiff. In regard to Section 219(2)(b), it is not applicable because there is no evidence that Northwest condoned Short's alleged discriminatory action. Indeed, Northwest management was not even made aware of the alleged discrimination by plaintiff. Section 219(2)(c) is clearly inapplicable because Short's conduct did not violate a non-delegable duty of Northwest. Lastly Section 219(2)(d) does not apply. It was not Short, but Gray, who purported to act or speak on behalf of Northwest when discharging plaintiff. Short's mere relating of his version of the facts during an interview with Gray does not amount to a grant by Northwest of any authority to Short in this situation.

For all the foregoing reasons, this court grants defendant Northwest's motion for summary judgment.

## ORDER

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED** and this case is dismissed with prejudice.

**SO ORDERED.**